218 P.3d 196 (2009)
BUILDING INDUSTRY ASSOCIATION OF WASHINGTON, Appellant/Cross-Respondent,
v.
Pat McCARTHY; Pierce County Auditor; Pierce County, Washington Respondents/Cross Appellants.
No. 38254-7-II.
Court of Appeals of Washington, Division 2.
October 13, 2009.
*198 Greg Overstreet, Michele Lynn Earl-Hubbard, Allied Law Group, LLC, Olympia, WA, Andrew C. Cook, Hamilton Consulting Group, Madison, WI, for Appellant/Cross-Respondent.
Daniel Ray Hamilton, Attorney at Law, Tacoma, WA, for Respondents/Cross Appellants.
Katherine George, Harrison Benis & Spence, LLP, Seattle, WA, for Amicus Curiae on behalf of Washington State Association of Broadcasters, Amicus Curiae on behalf of Washington Newspaper Publishers Assoc., Amicus Curiae on behalf of Allied Daily Newspapers of Washington.
PENOYAR, J.
¶ 1 The Building Industry Association of Washington (BIAW) appeals the summary judgment dismissal of its suit against Pierce *199 County alleging that the County violated the Public Records Act (PRA), chapter 42.56 RCW. BIAW contends that the trial court erred by: (1) granting the County's summary judgment motion, (2) dismissing the county auditor as a defendant, (3) striking an inadvertently disclosed email communication from defense counsel to his client, and (4) denying BIAW's motion for CR 11 sanctions. The County cross-appeals the trial court's dismissal of its cross-claim. The County contends that the trial court erred by: (1) denying its cross-claim for sanctions for BIAW's frivolous suit, and (2) denying its motion to seal the inadvertently disclosed attorney/client email communication. We affirm the trial court.
¶ 2 On October 12, 2006, Pierce County Auditor Pat McCarthy and her election manager Lori Augino reported by telephone to State Assistant Elections Director Pam Floyd that they had observed problems with voter registration forms submitted by a political group identified as the Association of Community Organizations for Reform Now (ACORN). Having heard similar concerns from two other counties, Floyd sent a "global informational email" announcement to all county auditors informing them of these reports. Clerk's Papers (CP) at 1161. Floyd later explained she had done so "to inform those who had not yet reported such concerns of this issue and to solicit from them information if similar issues had risen in those offices." CP at 1162. Based on information her office had received from Pierce and other reporting counties, Floyd later that day sent a second global email bulletin to every auditor describing how they too could identify ACORN registrations.
¶ 3 Though Pierce County's auditor already was aware of the issue because she had reported it, copies of the emails were sent to her because it was "easier to send a global email to all auditors." CP at 1162. In compliance with applicable retention policies, McCarthy read these informational emails and "more probably than not" deleted them the same month she received them. CP at 64-65.
¶ 4 Over five months later, on March 23, 2007, McCarthy received a public records request from BIAW seeking "all records relating to or referencing ... ACORN registration cards submitted to your office" and "all records relating to the cases referred to the prosecutor" from "this batch of registration cards." CP at 28. Within five days the auditor had identified 615 responsive documents and informed BIAW that they were available for inspection, copying, or mailing.[1] On April 18, 2007, however, BIAW wrote claiming it had "proof that Pierce County is withholding documents responsive to the original public records request" because the hundreds of documents the auditor previously provided included neither the global informational "email from the Washington Secretary of State's office to Pat McCarthy" that BIAW had obtained prior to making its PRA request, nor any documentation of a telephone call county election official "Lori" supposedly had concerning "ACORN registration cards with King County elections staff." CP at 34. BIAW threatened that if McCarthy's office "fails to provide the documents requested, BIAW will sue Pierce County to obtain the requested records." CP at 34.
¶ 5 Within a week McCarthy replied that despite a further exhaustive search, neither she nor her staff had discovered the email mentioned because her office did not keep the same emails as the secretary of state's office and that any alleged telephone conversation with King County had not been documented because the auditor's office does not generate records of every meeting and conversation. She also explained that both the staff and working space for the Pierce County Auditor's Office is small, which allows most communications between the auditor and her staff to be "face to face" so that they "do not generate large numbers of emails unless [someone] is out of the office." CP at 60. This second search, however, did reveal that one additional responsive email in the office's electronic in-box had been overlooked *200 as well as had all those in the auditor's sent boxes of email (because the sent boxes mistakenly had not been checked previously) and therefore 38 pages of additional emails were immediately provided to BIAW.
¶ 6 On May 2, 2007, BIAW again wrote asserting that the County had "failed to provide all of the public records it requested," describing it as "astonishing" that the auditor's office did not keep duplicates of secretary of state email bulletins and arguing "your office surely had in its possession e-mails and other public records pertaining to the ACORN voter registration forms prior to February, 2007" because "Pierce County knew there were problems with the ACORN registration forms prior to February, 2007." CP at 42. BIAW again threatened suit if the auditor's office did not produce the requested records, and warned that "[u]nlawful destruction of such records can be a crime." CP at 43. The auditor referred the matter to the Pierce County Prosecutor's Office, which confirmed to BIAW in a letter and a telephone conversation that the auditor's office had previously provided BIAW all records related to or referencing voter registration cards submitted by ACORN, other than original voter registration records protected by RCW 29A.08.710, and that the emails from the Washington Secretary of State's Office were not retained because they do not fall within the retention schedules set for local governments.
¶ 7 On May 25, 2007, BIAW filed a "Complaint For Violations of Public Records Act, RCW 42.56 and RCW 40.14," naming as defendants McCarthy "in her official capacity as Pierce County Auditor" and Pierce County. CP at 6. The complaint alleged that McCarthy and the County "violated RCW 42.56.550 by failing to provide all public records requested by BIAW" or "violated the Public Records Act and the Preservation and Destruction of Public Records Act, RCW 40.14 et seq., by failing to retain emails under the retention schedules set forth ... under the act." CP at 10.
¶ 8 In their answer, defendants denied these claims and asserted a counterclaim under RCW 4.84.185 contending that BIAW's suit was frivolous. BIAW conducted no discovery during the ensuing 4 months of litigation.
¶ 9 On June 21, 2007, McCarthy and the County moved for summary judgment based on sworn declarations from the auditor, her election manager, the records management coordinator, and a county computer expert, which confirmed that: (1) repeated searches revealed no requested document had been withheld from BIAW, (2) the only records not retained were the two informational emails from the secretary of state that had been disposed of pursuant to the state approved destruction authorization, and (3) no other undisclosed responsive emails would have existed because the small auditor's office does not often use electronic messages for internal communication. BIAW did not offer evidence disputing this testimony or seek a continuance under CR 56(f) to facilitate discovery of some opposing evidence; it instead asserted that defendants' unrefuted evidence was "extremely unlikely" and that it raised a fact question about whether the County had failed to properly retain and disclose records responsive to BIAW's request. CP at 92. BIAW contended that the County's affidavits provided "grounds for discovery." CP at 93. Without seeking a continuance to conduct discovery,[2] BIAW's brief opposing summary judgment asked the court to dismiss the County's summary judgment motion and "instead ... compel Pierce County to show any cause why it hasn't violated the PRA." CP at 103.
¶ 10 On July 20, 2007, the trial court ruled there was no "action in this case under [chapter] 42.56[RCW]" for withholding documents. Report of Proceedings (RP) (July 20, 2007) at 27. The court explained that:
[T]he only facts in the record are from Pierce County, their sworn declarations from the [C]ounty auditor and certain of her staff, including somebody from the IT department ... And I don't think there's any showing that Pierce County has these documents in their possession, that they have not disclosed.... There's no showing *201 that they existed and I'm going to grant summary judgment on that respect.
RP (July 20, 2007) at 27-28. The court dismissed the auditor as a separate defendant, granted summary judgment to the County "as to RCW 42.56," and further ruled that "any claim under RCW 40.14 et seq." against the County for deletion of records was "continued for further briefing." CP at 198.
¶ 11 On July 30, 2007, BIAW moved for reconsideration of its dismissed PRA claim. Recognizing BIAW still had made "no showing that Pierce County improperly deleted or destroyed any record in violation of the Act, despite the plaintiff's attempt to characterize the record in that way," the trial court on September 7, 2007, denied reconsideration and dismissed all of BIAW's claims. RP (Sept. 7, 2007) at 35.
¶ 12 On October 5, 2007, defendants moved for summary judgment on their counterclaim. In response, BIAW filed a CR 11 motion for sanctions calling defendants' counterclaim "a false legal position" that was "not normal" and "very odd behavior," and describing defense counsel as "emotionally invested," "out-of-control," "over the top," a "very angry lawyer who has lost his professional judgment" and "lost control of himself." CP at 963-64, 966 n. 1, 969, 973-74. Accompanying its motion, BIAW filed an email communication (dated September 7, 2007) between defense counsel and the auditor that BIAW had obtained as part of a later PRA request to the auditor's office.[3] This inadvertently disclosed attorney/client communication reported to clients and superiors on courtroom events and future litigation matters. The County moved to strike the September 7 email, arguing that it was irrelevant, a privileged communication, and attorney work product.[4]
¶ 13 On November 9, 2007, the trial court heard argument regarding the parties' motions to strike, the summary judgment motion on the County's counterclaim, and BIAW's CR 11 motion. The trial court ordered the September 7 email stricken as attorney work product and privileged.[5] As to the County's counterclaim, the court ruled that although BIAW lost its suit, its claim was not frivolous, and thus the court declined to award the County any fees or costs under RCW 4.84.185. The court also declined to award either party CR 11 sanctions.[6] The trial court observed that while open, vigorous, and free debate were to be supported, personal attacks were inappropriate. The trial court commented (but declined to find) that both counsel had "unclean hands" in this regard, and it chided counsel to "work on the issues and not on the personalities." RP (Nov. 9, 2007) at 30.
¶ 14 On or about December 7, 2007, the County filed a motion to seal and return the previously stricken September 7 attorney/client email communication. On December 14, 2007, the trial court heard argument on the motion to seal, took that matter under advisement, and later issued a letter ruling denying the motion.[7] In the letter ruling, *202 the court determined that the September 7 email was "at best, innocuous and at worst, embarrassing" and thus did not warrant sealing. CP at 1066.
¶ 15 On January 11, 2008, BIAW filed a notice of appeal, and on January 15, 2008, defendants cross-appealed. BIAW sought direct review, but our Supreme Court transferred the case to us. We subsequently granted a motion to file an amicus brief that was submitted by several media concerns.[8] Less than a week before oral argument, BIAW filed a statement of additional authority and a motion to substitute Jan Shabro, who was McCarthy's successor. The County opposed the substitution and moved to strike BIAW's statement of additional authority. BIAW responded to the County's motion with its own contingent motion to strike the County's previously filed statement of additional authorities in the event we granted the County's motion to strike. All motions filed in this time period were passed to the merits. We now consider BIAW's appeal and the County's cross-appeal.

ANALYSIS

I. Summary Judgment on BIAW's PRA Claim
¶ 16 BIAW contends that the trial court erred in granting the County summary judgment on BIAW's PRA claim. We disagree.
¶ 17 The County concedes that two emails sent from the secretary of state's office were not retained and were permanently deleted. BIAW claims that failure to retain these emails was unlawful and offers various theories to support the idea that other emails have been destroyed or are not being disclosed.

A. Review in Public Record Act Cases
¶ 18 We review all agency actions challenged under the public records act de novo. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 252, 884 P.2d 592 (1994). Because this case was decided on summary judgment, we examine whether disputed issues of material fact exist and whether the County was entitled to judgment as a matter of law. Smith v. Okanogan County, 100 Wash.App. 7, 11, 994 P.2d 857 (2000). Our review is limited, however, to the evidence and issues presented to the trial court. RAP 9.12; Sourakli v. Kyriakos, Inc., 144 Wash.App. 501, 509, 182 P.3d 985 (2008), review denied, 165 Wash.2d 1017, 199 P.3d 411 (2009).
¶ 19 The purpose of the act is to provide "full access to information concerning the conduct of government on every level ... as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17.010(11). The public records portion of the act, RCW 42.56.001-.902, requires all state and local agencies to disclose any public record upon request, unless it falls within certain specific enumerated exemptions. Sperr v. City of Spokane, 123 Wash. App. 132, 136, 96 P.3d 1012 (2004); King County v. Sheehan, 114 Wash.App. 325, 335, 57 P.3d 307 (2002); RCW 42.56.070(1). The requested record must be made available "for public inspection and copying." RCW 42.56.070(1). The Pierce County Auditor's Office is an "agency" subject to the act's provisions. RCW 42.56.010(1). RCW 42.17.020(2). See also former RCW 42.56.010 (2005) (referencing RCW 42.17.020) (Laws of 2005, ch. 274, § 101); and former RCW 42.17.020(2) (2005) (defining agency to include any county office) (Laws of 2005, ch. 445, § 6).
¶ 20 Public records subject to inspection under the act include (1) any writings (2) that contain information related to the "conduct of government or the performance of any governmental or proprietary function" and (3) that are "prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010(2); RCW 42.17.020(42). However, an agency has "no *203 duty to create or produce a record that is nonexistent." Sperr, 123 Wash.App. at 136-37, 96 P.3d 1012 (citing Smith, 100 Wash. App. at 13-14, 994 P.2d 857). Moreover, just as the act "does not provide `a right to citizens to indiscriminately sift through an agency's files in search of records or information which cannot be reasonably identified or described to the agency,'" Sperr, 123 Wash. App. at 137, 96 P.3d 1012 (quoting Limstrom v. Ladenburg, 136 Wash.2d 595, 605 n. 3, 963 P.2d 869 (1998)), the act "does not authorize indiscriminate sifting through an agency's files by citizens searching for records that have been demonstrated not to exist." Sperr, 123 Wash.App. at 137, 96 P.3d 1012 (emphasis added).

B. Review of Summary Judgment Orders
¶ 21 When reviewing an order of summary judgment, we perform the same inquiry as the trial court. Ames v. City of Fircrest, 71 Wash.App. 284, 289, 857 P.2d 1083 (1993) (citing Simpson Tacoma Kraft Co. v. Dep't of Ecology, 119 Wash.2d 640, 646, 835 P.2d 1030 (1992)). We consider the facts and reasonable inferences in the light most favorable to the nonmoving party. Ames, 71 Wash.App. at 289, 857 P.2d 1083. "The moving party is entitled to summary judgment only if the submissions to the court `show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Ames, 71 Wash. App. at 289, 857 P.2d 1083 (quoting CR 56(c)). A material fact is a fact upon which the outcome of the action depends. Ames, 71 Wash.App. at 289, 857 P.2d 1083. The moving party bears the initial burden of showing the absence of an issue of material fact. Ames, 71 Wash.App. at 289-90, 857 P.2d 1083; (quoting Young v. Key Pharm., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989)). If a defendant movant meets this burden, the plaintiff must respond by making a prima facie showing of the essential elements of its case. Ames, 71 Wash.App. at 290, 857 P.2d 1083; Young, 112 Wash.2d at 225-26, 770 P.2d 182. The plaintiff cannot rely on allegations in the pleadings or assertions, but must present competent evidence by affidavit or otherwise. Ames, 71 Wash.App. at 290, 857 P.2d 1083 (citing Young, 112 Wash.2d at 225-27, 770 P.2d 182). If the plaintiff fails to make such a showing, there is no genuine issue of fact as to the essential element in question and the trial court should grant the defendant's motion for summary judgment. Ames, 71 Wash.App. at 290, 857 P.2d 1083; Young, 112 Wash.2d at 225, 770 P.2d 182. Absent proof of an essential element of the plaintiff's case, all other facts are immaterial. Ames, 71 Wash.App. at 290, 857 P.2d 1083; Young, 112 Wash.2d at 225, 770 P.2d 182.
¶ 22 BIAW contends that by bringing a summary judgment motion, the County improperly shifted the burden to BIAW. BIAW urged the trial court to deny the County's summary judgment motion and instead proceed to a show cause hearing at which the County would bear the burden of proof as to why it failed to disclose any requested documents. However, there was no improper burden shifting here. See Spokane Research & Defense Fund v. City of Spokane, 155 Wash.2d 89, 106, 117 P.3d 1117 (2005) (summary judgment is an appropriate procedure in PDA cases, and trial court may conduct a hearing based solely on affidavits or in camera review of documents).
¶ 23 BIAW contends that the presence of several material fact questions concerning whether and how the auditor's office uses emails render summary judgment improper. However, the County's affidavits answer those questions (i.e. they describe office practices, when and how emails are used or not used, and what happened in this particular circumstance) and those affidavits are unrefuted. As the trial court correctly ruled, to avoid summary judgment, in answer to the County's affidavits, BIAW had to present the court with "facts ... not just mere speculation, not wishes, not thoughts, but facts that would be admissible at trial." RP (July 20, 2007) at 26-27. See Las v. Yellow Front Stores, Inc., 66 Wash.App. 196, 198, 831 P.2d 744 (1992) (where summary judgment movant has met its initial burden, in order to avoid summary judgment nonmoving party may not rely on the allegations in the pleadings but must set forth specific facts by affidavit or otherwise that show a genuine issue exists). Because BIAW did not do so, summary judgment was proper.

*204 C. Proof the Records Were Unlawfully Destroyed
¶ 24 Throughout its brief, BIAW characterizes the destruction of emails in this case as unlawful. But there is simply no evidence in the record of any unlawful destruction of emails. BIAW cites attorney general guidelines that agencies should not delete "all e-mails after a short period of time (such as thirty days)." Br. of Appellant at 17 (citing WAC 44-14-03005). However, those guidelines do not "bind any agency," WAC 44-14-00003; the auditor did not delete all emails; BIAW's request came almost half a yearnot thirty daysafter the only emails identified had been received, and the two emails actually deleted here were done so lawfully pursuant to state guidelines and applicable retention schedules. See RCW 40.14.060-.070.
¶ 25 Pam Floyd, the assistant elections director who sent the emails from the secretary of state's office, declared that she neither intended these bulletins to reflect a transaction of business between the agencies nor that they be "retained by county auditors as evidence of such." CP at 1162. In this context, when the County received copies of these two global emails, the emails likely would have been read and deleted as the secretary of state's own guidelines and state approved destruction authorizations recommend. RCW 40.14.060-.070 (destruction of public records authorized when pursuant to state approved schedule). If no special request was made, the emails then would have been kept on computer backup until later overwritten after a set retention period.
¶ 26 These procedures comport with applicable retention policies. See CP at 479, 511 (Secretary of State's "Records Management Guidelines" provide that when documents are "transmitted to multiple recipients ... [e]ach recipient need not retain the document beyond his or her immediate need for the information it contains" because "responsibility for retaining and disposing of these documents as public records logically rests with the office from which it was issued" and "[p]rompt deletion of duplicate copies of e-mail messages ... makes the system much easier to manage and reduces disk space consumed by redundant information.") (Emphasis deleted.)). See also CP at 509 (because "content and not the medium determine the treatment of the message" the "types of messages sent by e-mail that typically have no retention value" include "[i]nformation-only copies ... distributed for convenience of reference" and "[c]opies of inter-or intra-agency memoranda, bulletins or directions of a general information and non-continuing nature") (capitalization altered, emphasis deleted). State approved "Public Records Retention Schedule [and] Destruction Authorization" criteria provide likewise. See CP at 1159 ("E-Mail messages that are not public records" include "information only copies ... distributed for reference or convenience, such as announcements or bulletins" and may be "[d]elete[d] ... immediately upon review"); CP at 290, 295 ("general records retention schedule" noting "E-Mail messages which are usually administrative materials with no retention value" include "information-only copies") (capitalization altered); CP 576-77 ("County Auditor's General Records Retention Schedule" lists as "having no public record retention value and may be disposed of as soon as they have served their purpose: ... informational copies" of materials such as "correspondence ... prepared for reference and informational distribution") (capitalization altered).[9]
¶ 27 BIAW also contends that because the auditor's office appears to destroy emails, such destruction might violate the federal Voting Rights Act, 42 U.S.C. § 1974. This mere allegation is speculative and insufficient to avoid summary judgment. In any event, BIAW first mentioned the federal provision *205 in its motion for reconsideration. For that reason alone, we need not consider it. See Wesche v. Martin, 64 Wash.App. 1, 6-7, 822 P.2d 812 (1992) (issues first raised in motion for reconsideration need not be considered on appeal).

D. Proof That the Records Have Not Been Disclosed
¶ 28 Here, the only evidence presented at the summary judgment hearing indicated that the auditor's office had provided all the records that it had concerning BIAW's request. Sperr addresses this circumstance. Division Three of this court affirmed summary dismissal of the requestor's PRA suit, which alleged that he was denied his right to inspect or copy his police file. Sperr, 123 Wash.App. at 135, 96 P.3d 1012. In response to a records request, the manager of the city's police records unit sent the requestor every file that included the requestor's name and the results of all computer searches for his name on various databases. Although the computer databases contained no additional references to the requestor, he sought access to the police department's computer files so he could search for any information regarding his alleged criminal activity. Sperr, 123 Wash.App. at 133-34, 137, 96 P.3d 1012.
¶ 29 Division Three held that the city did not deny the requestor an opportunity to inspect or copy a public record because the public record he sought "did not exist" and, consequently, there was no agency action to review under the Act. Sperr, 123 Wash.App. at 137, 96 P.3d 1012. Accordingly, Sperr held that the trial court did not err in granting summary judgment dismissal of the requestor's PRA suit. Sperr, 123 Wash.App. at 137, 96 P.3d 1012 (citing Smith, 100 Wash. App. at 11, 994 P.2d 857). The same is true here.
¶ 30 Sperr answers BIAW's similar contention that it should be permitted to have a forensic computer expert comb the auditor's computers for any further emails regarding ACORN. That contention is contrary to Sperr because the only evidence presented at the summary judgment hearing indicated that any other emails referencing ACORN do not exist. See Sperr, 123 Wash.App. at 137, 96 P.3d 1012.
¶ 31 BIAW alternatively relies on Prison Legal News, Inc., v. Dep't of Corr., 154 Wash.2d 628, 635, 115 P.3d 316 (2005), and Progressive Animal Welfare Soc'y, 125 Wash.2d at 250, 884 P.2d 592, for the general proposition that records should be disclosed unless they fall within an exception. However, neither of these cases concerns records that did not exist at the time of a request. Moreover, the PRA's requirement that an agency provide a specific exemption when denying a request for public documents applies to "the situation where the agency has the records but says, `we are not going to give them to you' ... [rather than where the agency says] `we do not have these records.'" Daines v. Spokane County, 111 Wash.App. 342, 348, 44 P.3d 909 (2002). See also Smith, 100 Wash.App. at 13-14, 994 P.2d 857 (agency has no duty to create a record in response to a request; only existing records must be provided).
¶ 32 Notably, the only PRA provision that actually regulates destruction of records provides: "If a public record request is made at a time when such record exists but is scheduled for destruction in the near future, the agency ... may not destroy or erase the record until the request is resolved." RCW 42.56.100 (emphasis added). That provision was not triggered under the facts of this case.[10] The same is true for the PRA's show *206 cause provision. RCW 42.56.550(1) authorizes only those "having been denied an opportunity to inspect or copy a public record by an agency" to "require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records." Accordingly, there is "no agency action to review under the Act" where the agency did not deny the requestor an opportunity to inspect or copy a public record, because the public record he sought "did not exist." Sperr, 123 Wash. App. at 137, 96 P.3d 1012. See also Kleven v. City of Des Moines, 111 Wash.App. 284, 294, 44 P.3d 887 (2002) (no violation of the public disclosure act because the agency had "made available all that it could find"); Smith, 100 Wash.App. at 22, 994 P.2d 857 (when county had nothing to disclose, its failure to do so was proper). See also Hangartner v. City of Seattle, 151 Wash.2d 439, 447-48, 90 P.3d 26 (2004) (public disclosure act requires agencies to produce only identifiable public records).

E. Interplay of the Public Records Act and the Records Retention Act
¶ 33 BIAW argues that unless the courts require public agencies to comply with the Records Retention Act, chapter 40.14 RCW, agencies may easily circumvent the PRA, chapter 42.56 RCW, by improperly destroying records. While the logic of this argument is compelling, no improper destruction of record under the records retention act has been shown here so we are presented with no opportunity to determine if the law supports that logic.
¶ 34 We observe that BIAW's argument evolved substantially between the summary judgment hearing and the hearing on its motion for reconsideration. At summary judgment, BIAW contended that the County violated the PRA by failing to produce the two emails sent from the secretary of state's office, and that the prior destruction of these emails was unlawful (i.e. violated retention schedules). The trial court granted the County's summary judgment motion dismissing BIAW's PRA claim, but it ordered more briefing on the alleged violation of the retention act, chapter 40.14 RCW, including whether BIAW had standing to pursue any alleged violation of the retention act.
¶ 35 BIAW moved for reconsideration (with new counsel) and the County filed a renewed motion for summary judgment. At the ensuing hearing on both motions, BIAW's new counsel argued that the two emails sent from the secretary of state's office were not themselves material (BIAW's counsel stated he would not bring a PRA claim for documents that his client already had), but the existence of the two emails suggested that "[t]here might be more [emails]." RP (Sept. 7, 2007) at 10. The parties also agreed that there was no private right of action under chapter 40.14 RCW. The trial court noted such agreement, and found that the two emails in question were informational copies under the retention schedules provided by either party and thus they were not unlawfully deleted and were not subject to required disclosure under the PRA. There was also no evidence that the County had deleted other emails as BIAW alleged. The court denied reconsideration and dismissed BIAW's suit.
¶ 36 Notably, the trial court did not reach whether violation of the retention act could form a basis for a PRA violation because the court concluded that the two emails at issue had been properly deleted. Although BIAW attempted on reconsideration to broaden or recharacterize the issue before the court as whether an agency could avoid a PRA violation by unlawfully deleting emails, the trial court did not reach that issue under the facts presented.
¶ 37 On appeal, BIAW again argues that unlawful destruction of records (i.e. noncompliance with the retention act) should be a violation of the PRA. This record provides no basis for such argument.

F. Discovery and Continuance Issues
¶ 38 BIAW next contends that it argued to the trial court that it should be able to *207 conduct discovery, but that no discovery was allowed. However, the record shows that in the four months of litigation preceding the dismissal of its claim, BIAW never made a single discovery request, never moved under CR 56(f) for a continuance in order to conduct any discovery, and never made the showing required to delay summary judgment for purposes of discovery.
¶ 39 A trial court may continue a summary judgment hearing if the nonmoving party shows a need for additional time to obtain additional affidavits, take depositions, or conduct discovery. CR 56(f); Winston v. Dep't. of Corr., 130 Wash.App. 61, 64-65, 121 P.3d 1201 (2005). "The trial court may deny a motion for a continuance when (1) the requesting party does not have a good reason for the delay in obtaining the evidence, (2) the requesting party does not indicate what evidence would be established by further discovery, or (3) the new evidence would not raise a genuine issue of fact." Butler v. Joy, 116 Wash.App. 291, 299, 65 P.3d 671 (2003) (citing Tellevik v. Real Prop. Known as 31641 W. Rutherford St., 120 Wash.2d 68, 90, 838 P.2d 111, 845 P.2d 1325 (1992)). We review a trial court's decision on a request to continue the summary judgment for abuse of discretion. Colwell v. Holy Family Hosp., 104 Wash.App. 606, 615, 15 P.3d 210 (2001). A trial court abuses its discretion if it bases its decision on untenable or unreasonable grounds. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 40 As noted, BIAW did not move for a continuance. Where a continuance is not clearly requested, the trial court does not err in deciding a summary judgment motion based on the evidence before it. See Colwell, 104 Wash.App. at 615, 15 P.3d 210; Turner v. Kohler, 54 Wash.App. 688, 695, 775 P.2d 474 (1989) (trial court acted properly in hearing the motion on the basis of the showing before it). Guile v. Ballard Cmty. Hosp., 70 Wash.App. 18, 24-25, 851 P.2d 689 (1993) (if plaintiff "needed additional time, the proper remedy would have been to request another continuance from the trial court" and "[b]ecause she failed to do this, ... she is precluded from raising this issue on appeal" since to "hold otherwise would constitute an unwarranted encroachment on the trial court's discretion to dismiss cases which fail to raise genuine issues for trial"). In light of BIAW's failure to clearly move for a continuance, we hold that the trial court did not err in deciding the County's summary judgment motion based on the evidence before the court.

II. Dismissal of Auditor; Motion to Substitute Parties
¶ 41 BIAW contends that the trial court erred in dismissing McCarthy as a named defendant and asks us to address the fact that a new auditor has been sworn in. As we affirm dismissal, we need not address these issues. Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 165-66, 795 P.2d 1143 (1990) (reviewing court need not decide all issues the parties raise, but only those that are determinative).

III. Motion to Strike
¶ 42 BIAW contends that the trial court erred in granting the County's motion to strike the September 7, 2007, email attached to BIAW's CR 11 motion, which BIAW had filed in response to the County's counterclaim. We review the trial court's determination for abuse of discretion. State v. Finch, 137 Wash.2d 792, 810, 975 P.2d 967, cert. denied, 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999) (trial court's evidentiary rulings are reviewed for abuse of discretion).
¶ 43 As noted, the trial court granted the motion to strike, ruling that the attorney/client email communication was work product or privileged. BIAW argues that the email was neither privileged nor work product. Even if that is so, the trial court did not abuse its discretion in striking the email because the email was simply not relevant. We may affirm a trial court on any basis the record and the law support. State v. Kelley, 64 Wash.App. 755, 764, 828 P.2d 1106 (1992). Here, the tone of the email may have been embarrassing for the prosecutor, but the information that it contained was already known to both parties. The email reported that the County had prevailed at the hearing held earlier that day, it described a disclosure the trial judge made in open *208 court, and it noted that the County's counterclaim for sanctions was still pending. All of these matters were public record. It was irrelevant to BIAW's CR 11 claim (despite BIAW's contentions otherwise) and had no value except for the possible embarrassment that the tone of some comments might cause defense counsel. As the trial court later noted, the email was "at best, innocuous and at worst, embarrassing." CP at 1066. Accordingly, we hold that the trial court did not abuse its discretion in striking the irrelevant September 7, 2007, email.

IV. Sanctions
¶ 44 As noted, in response to BIAW's suit, the County filed a counterclaim seeking fees and sanctions under RCW 4.84.185 and CR 11. BIAW responded by filing a motion for CR 11 sanctions. The trial court denied both parties' claims noting that the case presented at least some debatable issues and that the court was troubled by the level of discourse and the conduct of counsel for both sides. Both parties challenge the denial of their claims for sanctions.
¶ 45 We review a trial court's decision to impose or deny CR 11 sanctions under the abuse of discretion standard. Brin v. Stutzman, 89 Wash.App. 809, 827, 951 P.2d 291 (1998). An abuse of discretion occurs only when no reasonable person would take the view that the trial court adopted. State v. Castellanos, 132 Wash.2d 94, 97, 935 P.2d 1353 (1997).
¶ 46 The purpose of CR 11 is to deter baseless filings and curb abuses of the judicial system. Skimming v. Boxer, 119 Wash.App. 748, 754, 82 P.3d 707 (2004) (citing Biggs v. Vail, 124 Wash.2d 193, 197, 876 P.2d 448 (1994)). A filing is baseless if it is not well grounded in fact, or not warranted by existing law or a good faith argument for altering existing law. Skimming, 119 Wash. App. at 754, 82 P.3d 707. "The burden is on the movant to justify the request for sanctions." Biggs, 124 Wash.2d at 202, 876 P.2d 448. Because CR 11 sanctions have a potential chilling effect, the trial court should impose sanctions "only when it is patently clear that a claim has absolutely no chance of success." Skimming, 119 Wash.App. at 755, 82 P.3d 707 (citing In re Cooke, 93 Wash. App. 526, 529, 969 P.2d 127 (1999)). The fact that a complaint does not prevail on its merits is not enough. Bryant v. Joseph Tree, Inc., 119 Wash.2d 210, 220, 829 P.2d 1099 (1992).
¶ 47 Similarly, RCW 4.84.185 authorizes the trial court to award the prevailing party reasonable expenses, including attorney fees, incurred in opposing a frivolous action. Koch v. Mut. of Enumclaw Ins. Co., 108 Wash.App. 500, 510, 31 P.3d 698 (2001). Such an award is available only when the action as a whole can be deemed frivolous. Koch, 108 Wash.App. at 510, 31 P.3d 698. "An appeal is frivolous only `if no debatable issues are presented upon which reasonable minds might differ, and it is so devoid of merit that no reasonable possibility of reversal exists.'" Goad v. Hambridge, 85 Wash. App. 98, 105, 931 P.2d 200 (1997) (quoting Chapman v. Perera, 41 Wash.App. 444, 455-56, 704 P.2d 1224 (1985)). We review a trial court's award under RCW 4.84.185 for an abuse of discretion. Koch, 108 Wash.App. at 510, 31 P.3d 698.
¶ 48 Here, the trial court asked for additional briefing regarding the interplay between chapter 40.14 RCW and chapter 42.56 RCW, and also permitted additional oral argument when addressing the motion for reconsideration. This alone indicates thatat least in the trial court's mindthe case before it was not frivolous. Moreover, the County's contention that BIAW clearly had no legal basis for including McCarthy as a defendant was at least debatable given that PRA suits have been brought against other state officers in their official capacity. See e.g. Evergreen Freedom Found. v. Locke, 127 Wash.App. 243, 110 P.3d 858 (2005). Also, the trial court rejected the County's initial contention that the two emails sent from the secretary of state's office were not public records because the County did not prepare, own, or use the emails. Although the court ultimately concluded that these two emails were informational copies only, and thus not subject to disclosure under the PRA, the record demonstrates that the County did not prevail on every issue. In light of these *209 circumstances and the trial court's justified displeasure with the conduct of both counsel, we hold that the trial court did not abuse its discretion in denying the parties' claims for sanctions.[11]

V. Motion to Seal
¶ 49 The County contends that the trial court erred in denying its motion to seal and return the inadvertently disclosed September 7, 2007, attorney/client email communication. We disagree.
¶ 50 The County filed the motion to seal some six weeks after the email appeared in the court file as an attachment to a BIAW filing. The trial court heard oral argument on the matter on December 14, 2007, and denied the motion in a subsequent letter ruling.
¶ 51 The legal standard for sealing or unsealing court records is a question of law we review de novo. Rufer v. Abbott Labs., 154 Wash.2d 530, 540, 114 P.3d 1182 (2005). We review a trial court's decision to seal or unseal records for abuse of discretion, but if that decision is based on an improper legal rule, we will remand the case to the trial court to apply the correct rule. Rufer, 154 Wash.2d at 540, 114 P.3d 1182.
¶ 52 Trial proceedings and records attached to dispositive motions filed in civil cases are presumptively open absent some overriding interest. Rufer, 154 Wash.2d at 541-42, 114 P.3d 1182; Dreiling v. Jain, 151 Wash.2d 900, 910, 93 P.3d 861 (2004). When addressing requests to seal court documents, in order to balance the public's constitutional right to open administration of justice against potentially conflicting rights, courts are required to apply the five factors noted in Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 37-39, 640 P.2d 716 (1982); Rufer, 154 Wash.2d at 544, 114 P.3d 1182. Those factors are: (1) The proponent of closure and/or sealing must make some showing of the need therefor. (2) Anyone present when the closure and/or sealing motion is made must be given an opportunity to object to the suggested restriction. (3) The court, the proponents, and the objectors should carefully analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened. (4) The court must weigh the competing interests of the parties and the public. And finally, (5) the closure or sealing order must be no broader in its application or duration than necessary to serve its purpose. See Dreiling, 151 Wash.2d at 913-15, 93 P.3d 861 (quoting Ishikawa, 97 Wash.2d at 37-39, 640 P.2d 716).
¶ 53 Here, the trial court applied the Ishikawa factors when considering the County's motion to seal and correctly found that the County could not make the required showing. For instance, the County simply cannot show that sealing is needed (first Ishikawa factor). As previously noted, while the tone of the September 7 email may have been embarrassing for the prosecutor, the information that it contained was already known to both parties and was a matter of public record. The trial court correctly determined that the email "is, at best, innocuous and at worst, embarrassing: these are not the types of interests allowed to be protected by the court under these circumstances." CP at 1066-67.
¶ 54 The County's interest in sealing from public view the content of an innocuous email does not outweigh the public's right to open access to court proceedings. Rufer, 154 Wash.2d at 541-42, 114 P.3d 1182. Accordingly, we hold that the trial court applied the correct legal standard, and did not abuse its discretion in declining to seal the September 7 email under the circumstances of this case.

VI. Amicus Brief and Motions Passed To The Merits
¶ 55 The brief of amici contends that the parties and the trial court were wrong in agreeing that if destruction of public *210 records comports with the records retention act, chapter 40.14 RCW, such destruction does not violate the PRA, chapter 42.56 RCW. Amici argue that the destruction of the two emails from the secretary of state's office violated the PRA regardless of whether their destruction complied with chapter 40.14 RCW and applicable retention and destruction schedules. Amici urge us to clarify that the PRA trumps the records retention act. Further, amici suggest a new rule. Assuming that the County violated the PRA when it did not provide a record that had long since been destroyed prior to any PRA request for that record, amici suggest that any fines imposed under the PRA for the agency's non-production of the previously destroyed record be limited to one year. These are new issues argued only by amici, and for that reason we decline to address them. See State v. Gonzalez, 110 Wash.2d 738, 752 n. 2, 757 P.2d 925 (1988) (arguments raised only by amici curiae need not be considered). See also RAP 9.12 (when reviewing an order granting or denying summary judgment the appellate court will consider only evidence and issues called to the trial court's attention).[12]
¶ 56 As for the motions passed to the merits, we deny BIAW's motion to substitute as a party McCarthy's successor to the auditor's office. Given our disposition of this caseaffirming the trial court's dismissal of BIAW's PRA claim and the court's dismissal of the County's counterclaimthe substitution issue is moot. We also deny BIAW's and the County's respective motions to strike each other's statements of additional authorities.[13] Moreover, we have reviewed the cases contained in those statements and determined that they provide no basis for altering our decision.

VII. Attorney Fees
¶ 57 Both parties seek attorney fees. BIAW requests reasonable attorney fees and costs on appeal, citing RCW 42.56.550(4), as the authority for such award. The statute provides in pertinent part that "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record ... shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." RCW 42.56.550(4). By its terms, the statute only provides for fees to the prevailing party. BIAW did not prevail below. The trial court awarded statutory fees of $200 to the County as the prevailing party. Nor has BIAW prevailed on appeal. Accordingly, we deny BIAW's request for fees.
¶ 58 The County contends that "CR 11 authorizes an award of fees and costs to defendants both below and now on appeal." Br. of Resp't/Cross-App. at 46. However, the trial court awarded no CR 11 sanctions, and the rule is intended for use in superior court, not in the appellate court. While CR 11 sanctions were formerly available on appeal under RAP 18.7, a 1994 amendment to RAP 18.7 and 18.9 eliminated the reference to CR 11 in RAP 18.7 and provided for *211 sanctions on appeal only under RAP 18.9. See 3 Karl B. Tegland, Washington Practice: Rules Practice, RAP 18.7 author's cmts. at 445 (6th ed.2004). Moreover, Washington follows the "American rule," which provides that fees and expenses are not recoverable absent specific statutory authority, contractual provision, or recognized grounds in equity. Wagner v. Foote, 128 Wash.2d 408, 416, 908 P.2d 884 (1996). Because the County has not identified an applicable basis for awarding it fees, we deny the County's fee request.
¶ 59 We affirm the trial court, deny BIAW's motion to substitute a party, deny both parties' motions to strike the other's statement of additional authorities, and deny both parties' requests for fees on appeal.
We concur: HOUGHTON and ARMSTRONG, JJ.
NOTES
[1] The 615 records were produced after a search of the auditor's email, electronic files and hard copy files.
[2] BIAW's brief opposing summary judgment did not mention CR 56(f).
[3] BIAW submitted a new PRA request to the auditor's office on September 25, 2007, seeking all documents regarding the auditor's business trips since January 1, 2007, and all documents referencing voter registration cards submitted by ACORN from April 18, 2007, until receipt of the request letter. The September 7, 2007, email in question was inadvertently provided as part of that request.
[4] Both sides submitted motions to strike various documents (e.g. newspaper articles, declarations, etc.) submitted by the parties relevant to the County's counterclaim and BIAW's opposition to same. The trial court's rulings on those matters are not challenged other than as described above.
[5] At the September 7, 2007, hearing the trial judge had disclosed her spouse's previous employment by plaintiff's new counsel, prompting the attorney/client email that informed defendants of that courtroom disclosure and confirmed the intent to proceed with the County's counterclaim for fees and sanctions.
[6] Overlooking CR 54(e), neither party obtained a timely order reflecting dismissal of BIAW's CR 11 claim. That omission was rectified by the trial court's subsequent March 14, 2008, order denying BIAW's motion for CR 11 sanctions, which was entered with the Supreme Court's permission following BIAW's filing of its petition for direct review.
[7] At the December 14 hearing, the trial court also ruled that the County was the prevailing party in the overall suit, even though it had lost its counterclaim. The court issued a final order awarding the County $200 in statutory costs as the prevailing party.
[8] Amici include Allied Daily Newspapers of Washington, Washington Newspaper Publishers Association, Washington State Association of Broadcasters, and Society of Environmental Journalists. These amici had previously filed a brief supporting BIAW's petition for direct review.
[9] We note that in its motion for reconsideration, BIAW argued to the trial court that the correct retention guidelines were those attached to state archivist, Jerry Handfield's, declaration rather than the guidelines that the County provided. In rendering its decision on BIAW's motion for reconsideration and clarifying its earlier ruling, the trial court correctly noted that both retention policies provided that informational copies qualified as administrative materials with no retention value and, thus, could be disposed of as soon as they had served their purpose. See RP (Sept. 7, 2007) at 40-41; CP at 184, 295 (guidelines designating email messages that are informational copies as administrative materials with no retention value).
[10] Yacobellis v. City of Bellingham, 55 Wash. App. 706, 780 P.2d 272 (1989), on which BIAW relies, does not require a different result. There, the request for public records was made repeatedly over nearly a one year period. Yacobellis, 55 Wash.App. at 708, 780 P.2d 272. At the end of that period, the agency informed the requester that the records had been discarded. The Yacobellis court noted that it was "unknown" when the records were actually discarded. 55 Wash.App. at 708, 780 P.2d 272. Nevertheless, the court noted that when the requester first asked for the questionnaires at issue, the city "refused to provide copies of the completed questionnaires on the ground that all complete data was in the survey," which the city did provide. Yacobellis, 55 Wash.App. at 708, 780 P.2d 272. Notably, the stated reason for the city's refusal to give the requester the documents when he first asked for them was not because the city did not have the documents. Thus, Yacobellis does not appear to be a case where destruction of documents occurred before a request was made. Accordingly, the facts of Yacobellis fall within the prohibitions of RCW 42.56.100 as discussed above. However, that is not the circumstance presented in this case.
[11] Additionally, BIAW's opening brief refers us to its trial brief for argument supporting its CR 11 motion. This is improper and a sufficient basis for us to disregard the issue. Issues relying on incorporated trial court briefing are considered abandoned. Holland v. City of Tacoma, 90 Wash.App. 533, 538, 954 P.2d 290 (1998); McNeil v. Powers, 123 Wash.App. 577, 591, 97 P.3d 760 (2004).
[12] "[T]he case must be made by the parties litigant, and its course and the issues involved cannot be changed or added to by friends of the court." Long v. Odell, 60 Wash.2d 151, 154, 372 P.2d 548 (1962) (internal quotation marks and citation omitted). This is a long established practice of Washington courts to which we adhere. See e.g. Walker v. Wiley, 177 Wash. 483, 491, 32 P.2d 1062 (1934); Gonzalez, 110 Wash.2d at 752 n. 2, 757 P.2d 925 (citing cases); Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 629 n. 30, 90 P.3d 659 (2004). As noted, amici's issues are their own and do not appear in the parties' briefing to this court. Accordingly, even had the parties raised these issues to the trial court, but failed to continue to press those arguments on appeal, relying instead on amici to so argue, we would consider the arguments abandoned and not address them. See Walker, 177 Wash. at 491, 32 P.2d 1062. In this case, the arguments of amici were never presented to the trial court and thus court rule directs us not to consider them when reviewing the summary judgment decision. See RAP 9.12. See also Sourakli, 144 Wash.App. at 509, 182 P.3d 985 (citing RAP 9.12 as basis for declining to consider argument not made to the trial court); Coronado v. Orona, 137 Wash.App. 308, 318, 153 P.3d 217 (2007) (RAP 9.12 limits our review to issues brought to the trial court's attention).
[13] The County's statement cites Fisk v. City of Kirkland, 164 Wash.2d 891, 194 P.3d 984 (2008), and Ameriquest Mortgage Co. v. State Attorney Gen., 148 Wash.App. 145, 199 P.3d 468 (2009). BIAW's statement cites State ex rel. Toledo Blade Co. v. Seneca County Bd. of Comm'rs., 120 Ohio St.3d 372, 899 N.E.2d 961 (2008).