IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHRISTOPHER JACK REID, | ) | |
| | ) | No. 31039-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PULLMAN POLICE DEPARTMENT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Christopher Jack Reid seeks to compel, under the Public Records

Act (PRA), chapter 42.56 RCW, the Pullman Police Department (PPD) to produce,

among other records, records the police department might have maintained in its

investigatory file but claims it *did not possess at the time* of Reid's records request. The

trial court denied Reid relief, and we affirm.

## FACTS

A jury convicted Christopher Reid of second degree rape and burglary. After

losing an appeal, Reid requested all records related to his criminal case that the PPD, the

investigating agency, possessed. The PPD responded, providing Reid with what it claims

to be the entire copy of his criminal case file. The PPD produced over 1,000 pages and

the response included two four-inch, loose-leaf notebooks and one three-inch notebook.

After reviewing the voluminous records given to him by PPD, Christopher Reid concluded that records were missing. For example, he demands that PPD produce a copy of the audio recording of the rape victim's 911 call. An independent agency, Whitcom, however, took and recorded the call. Whitcom is a consolidated 911 dispatch center for Pullman, Asotin County, Washington State University, and Moscow, Idaho. The PPD informed Reid that the city did not have the 911 recording and suggested to Reid that he contact Whitcom.

In a narrative report by Pullman Police Officer William Orsborn, Orsborn wrote that he gave photo lineup sheets to other officers who conducted interviews of those who saw Reid and Reid's accomplice. The records produced by PPD included statements of the witnesses who underwent the photo lineups. Christopher Reid supposes the PPD failed to produce documents because the records he received do not identify the names of the officers who performed the photo lineups.

Christopher Reid believes that the PPD failed to provide him with an audio recording of an interview of the rape victim, K.N.E., conducted on September 13, 2007 by Pullman Police Officer Scott Kirk. A narrative report of Officer Kirk contains, near the end, the words "End of tape" and the initials "JSK/es." Clerk's Papers (CP) at 46. Officer Kirk signed an affidavit declaring: "I never took an audio recorded statement of the victim in this case. This record does not exist." CP at 127. He also stated that he

2

dictated his narrative, and the narrative report was typed by a transcriptionist. The transcriptionist, Elysia Spencer, averred that she transcribed the report Kirk dictated and that she did not transcribe an audio recording of a statement from the victim. In other words, reference to the "End of tape" in the report refers to the dictated tape from Kirk, not a tape of a recording of the victim. CP at 46.

Separately from the request to Pullman, Christopher Reid requested records from the Washington State Patrol Identification and Criminal History Section (WSP). Reid compared the WSP records with the case file PPD produced. The WSP records showed that, during Pullman's rape investigation, PPD Officers William Orsborn and Michael Crow requested and received criminal histories of four other individuals. The results from those requests were not in the file PPD produced. Christopher Reid believes these missing records will substantiate his claim of innocence. He does not explain, but it is not relevant to the appeal, why these purported exculpatory records have not or cannot be received from the WSP.

According to PPD's Property and Evidence Specialist, police officers in the field obtain information from WSP databases by radioing requests to Whitcom, a regional dispatch center, and then receiving results over the radio. In such circumstances, an officer generally does not request printouts of the results for insertion in the case file. Even if an officer requests printouts and those printouts enter the case file, the officer may later remove them "in light of new information that tended to show the WSP record

3

was irrelevant." CP at 134.

One investigating officer, Michael Crow, submitted an affidavit stating he did not print the histories he obtained from the WSP when investigating the rape. Pullman, however, did not submit an affidavit from Officer William Orsborn, who also requested the histories from the WSP. Orsborn is retired.

Reid filed a motion with the trial court to "order [PPD] to show cause on why it has refused to allow copying" of the criminal histories, among the other records. CP at 9. The City of Pullman responded that it did not possess or control the records. In support of its position, Pullman submitted seven sworn statements from Pullman employees explaining why the records Christopher Reid requested did not exist. PPD's Records Specialist averred that, upon receipt of Reid's records request, she provided him a copy of the department's entire investigation file concerning the rape.

After Pullman responded to the show cause order, Christopher Reid filed a motion for leave to insert an additional claim seeking declaratory relief for alleged violations of the Preservation and Destruction of Public Records Act (PDPRA) chapter 40.14 RCW. After reviewing the affidavits submitted by the parties, the trial court denied Reid any relief. The trial court found that Pullman's explanation for the absence of the criminal histories was "credible and logical" and that Pullman produced every record in its possession and control at the time the records request was made. CP at 126.

4

ANALYSIS

PUBLIC RECORDS ACT

On appeal, Christopher Reid continues to argue that Pullman violated the PRA because it has not produced records it possesses or possessed. The superior court reviews an agency's response to a public records request de novo. RCW 42.56.550(3); *Zink v. City of Mesa*, 140 Wn. App. 328, 335-37, 166 P.3d 738 (2007). In turn, we also undertake de novo review, when the trial court rendered, as it did here, a decision based upon pleadings rather than oral testimony. *Gronquist v. Dep't of Corrections*, 159 Wn. App. 576, 590, 247 P.3d 436 (2011). Under such circumstances, the appellate court stands in the same position as the trial court and is not bound by the trial court's findings on disputed factual issues. *Id.*

We have reviewed the entire record and conclude, as did the trial court, that Pullman's explanations with respect to the absence of records are credible. An officer may contact WSP for information that the officer reviews on a computer and never prints. The names of the officers performing lineups may often be important, but could have been of little consequence in the rape investigation because of a lack of certainty in the lineups, such that the names were never documented. Contrary to Reid's contention, the police department provided pages of raw data prepared as part of the lineups. Pullman amply explains why it has produced no recording of an interview of the victim or the 911 call of the victim.

5

Reid believes the police are seeking to shield exculpatory information, but the background and history of the case does not confirm this contention. The volume of records provided by Pullman suggests that the city lacked desire to exclude any documents in its production. In short, Reid has provided no firm evidence that Pullman withheld records. "'Purely speculative claims about the existence and discoverability of other documents will not overcome an agency affidavit which is accorded a presumption of good faith.'" *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 867, 288 P.3d 384, 389 (2012) (quoting *Trentadue v. F.B.I.*, 572 F.3d 794, 808 (10th Cir. 2009)), *review denied*, 177 Wn.2d 1002 (2013).

Christopher Reid correctly notes that an agency is forbidden from destroying responsive documents while a PRA request is pending. *See* RCW 42.56.100. Nevertheless, the argument does not control since the evidence does not support a finding of spoliation of records. Assuming officers discarded the WSP criminal histories, the disposal occurred years before the records request. Christopher Reid also impliedly argues the PPD violated the PRA when it did not create records to identify officers who assisted in photo lineups. Yet, "'an agency has no duty to create or produce a record that is nonexistent.'" *Bldg. Indus. Ass'n of Wash. v. McCarthy (BIAW)*, 152 Wn. App. 720, 734, 218 P.3d 196 (2009) (quoting *Sperr v. City of Spokane*, 123 Wn. App. 132, 136-37, 969 P. 3d 1012 (2004)).

Christopher Reid argues that the trial court erred when it found the PPD complied with the PRA without an affidavit from Officer William Orsborn. In violation of RAP 10.3(a)(6), Reid fails to cite legal authority for this contention. Regardless, Orsborn's testimony is not required. In PRA cases, the agency's burden is to establish "beyond material doubt" the reasonableness of its search for documents, and "[t]o do so, the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith." *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 720-21, 261 P.3d 119 (2011). Pullman submitted seven detailed, sworn statements explaining the reasonableness of its search and attached over 1,000 pages of records demonstrating that it produced Christopher Reid's entire criminal case file.

## PRESERVATION AND DESTRUCTION OF PUBLIC RECORDS ACT

Christopher Reid faults the trial court for refusing to require the PPD to offer proof that it complied with the State Records Management Guidelines and Retention Schedules. The PDPRA permits the State Archivist to create guidelines to assist government agencies to comply with the Act. RCW 40.14.070(2)(a)(iii). The State Archivist created and distributed the Records Management Guidelines for Local Government Agencies of Washington State (Guidelines).

Reid asserts Washington courts have relied on the Guidelines when analyzing whether agencies violated the Public Records Act citing *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 148-49, 240 P.3d 1149 (2010); *Bldg. Indus. Ass'n of Washington (BIAW)*,

152 Wn. App. 720; *Daines v. Spokane County*, 111 Wn. App. 342, 350, 44 P.3d 909 (2002), *overruled in part on other grounds by Neighborhood Alliance of Spokane County v. County of Spokane*, 172 Wn.2d 702, 261 P.3d 119 (2011). To the contrary, however, courts have held that an agency need not show it complied with the PDPRA to prove it complied with the PRA. *West v. Dep't of Natural Resources*, 163 Wn. App. 235, 245, 258 P.2d 78 (2011), *review denied* 173 Wn.2d 1020 (2012); *BIAW*, 152 Wn. App at 741. Anyway, Reid identifies no guideline violated by Pullman and courts have questioned whether a private party has standing to sue under the PDPRA. *BIAW*, 152 Wn. App. at 742; *Daines*, 111 Wn. App. at 350.

## MOTION FOR ADDITIONAL BRIEFING

In its brief, Pullman wrote that the trial court reasonably concluded it did not violate the PRA based on affidavits along with "the context of certain records." Christopher Reid claims he has no knowledge of the "context" or "certain records" to which Pullman refers. In his reply brief, Reid asks this court, pursuant to RAP 10.4(d), to order Pullman to elaborate on the meaning of the phrase. This court denies Reid's motion because RAP 10.4(d) does not permit a party to file a non-dispositive motion in his brief. *Ash v. Dep't of Labor & Indus.*, 173 Wn. App. 559, 561, 294 P.3d 834 (2013).

## CONCLUSION

After conducting our de novo review of the record, we hold that Pullman did not violate either the PRA or the PDPRA. We affirm the trial court.

No. 31039-6-III
*Reid v. Pullman Police Dep't*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, C.J.

Kulik, J.

9