[No. 44947.   En Banc.   February 2, 1978.]

GENETTE LURUS, *Respondent,* v. BRISTOL LABORATORIES, INC., *Petitioner.*

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *William A. Helsell,* for petitioner.

*MacGillivray, Jones, Clarke, Schiffner & Johnson,* by *Dan W. Keefe* and *John D. MacGillivray,* for respondent.

DOLLIVER, J.—This case comes before the court on a discretionary review of an interlocutory order entered December 30, 1976, compelling answers to plaintiff's interrogatories. Both parties petition for review of portions of that order.

Defendant Bristol Laboratories produces a drug known as kanamycin sulfate, which is marketed under the trade name of "Kantrex." The packages containing the drug carry a warning which states in part: "ADVERSE REACTIONS: Severe irreversible hearing loss has been reported."

During the course of proceedings, plaintiff served defendant with 56 interrogatories regarding testing, warnings, reported effects, claims, settlements and other particulars involving Kantrex and its use.

In response to many of the interrogatories, defendant referred plaintiff to defendant's New Drug Application (NDA) which is maintained at Bristol Laboratories in East Syracuse, New York. The NDA is the formal record upon which approval of a drug by the Federal Drug Administration is predicated and contains, among other things, the results of all clinical studies done on the drug. At the time of this action, there were 3,327 pages in the Kantrex NDA. An addendum supplementing the initial report is issued periodically by Bristol and lists test results published

regarding Kantrex, digests known adverse effects encountered in application of the drug, and tabulates information located in the NDA.

Plaintiff obtained a court order for production of the NDA in Spokane for examination by plaintiff and one expert—Dr. Angelo G. Lurus, who is a practicing physician and the father of the minor child. Defendant delivered a photostatic copy of the NDA to plaintiff in October 1974.

In May 1976, plaintiff moved to compel answers to certain interrogatories which defendant had answered only by way of general reference to the NDA. The motion was based on the affidavit of plaintiff's expert who stated he was "unable to ascertain from such material [the NDA] any information" sought in regard to enumerated interrogatories. Defendant resisted the motion by way of a memorandum in which it cited specific page numbers in the NDA where some of the information sought could be found.

Two of the interrogatories (Nos. 46 and 47) listed in plaintiff's motion relate to discovery of other claims, including settlements made against Bristol arising out of injuries allegedly caused by Kantrex. While Bristol had never asserted these interrogatories would be answered in the NDA, it moved to limit their scope so as to include only information regarding adverse effects occurring prior to May 12, 1970, the date of injury to plaintiff's minor child.

In ruling on the motion to compel answers, the trial court held (1) where the answer to the interrogatory was found at a specific page or pages of the NDA, this should be set forth by the defendant, and (2) answers to Nos. 46 and 47 are limited to claims arising from injuries occurring prior to May 12, 1970.

Defendant Bristol appeals ruling (1) and plaintiff Lurus cross–appeals ruling (2). We affirm the former and reverse the latter.

Disposition of Bristol's appeal hinges upon application of CR 33(c) which provides:

Where the answer to an interrogatory may be derived or ascertained from the business records of the party

upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, or from a compilation, abstract or summary based thereon, *and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served,* it is sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries.

(Italics ours.) The trial judge specifically found the relative burdens disparate, stating, "I do not feel the burden is the same for defendants as the plaintiffs in searching through this material."

This court has not previously been called upon to review the operation of CR 33(c). The controlling inquiry looks to the relative burdens of search. Critical factors in allocating the burden are the nature of the records and the familiarity therewith of the compiling party.

Bristol must compile NDA's for drugs of their manufacture pursuant to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(j) (1972). Experience attained by Bristol through compilations of numerous NDA's suggests superior familiarity with the content and general organization of the Kantrex NDA. Certain employees of Bristol surely have specific knowledge of the contents of the Kantrex file because the supplemental reports issued by Bristol necessitate a review of test reports and other data residing in the file. In this regard, we find merit in the passage from *Luey v. Sterling Drug, Inc.,* 240 F. Supp. 632, 636 (W.D. Mich. 1965), cited by plaintiff:

Extreme doubts are entertained by the court that a complex and corporate operation such as defendant pharmaceutical house, engaged in a highly competitive area of commerce, would fail to keep accurate and detailed records relating to products so closely regulated by government and widely used in the treatment of human beings.

We do not hold mere compilation by a party of data is enough to demonstrate superior knowledge on its behalf so as to establish conclusively its relative burden of search is lighter than that of the interrogating party. However, the detailed nature of these records and their reuse in publication and supplemental reports has demonstrated that, as between Bristol and Lurus, the burden is substantially lighter for Bristol.

We also note the underlying principle expressed in the comments to CR 33(c):

A respondent may not impose on an interrogating party a mass of records as to which research is feasible only for one familiar with the records.

*Advisory Committee's Note,* 48 F.R.D. 487, 524–25 (1970).

Previously we have held "The trial court is given reasonable discretion in determining how far [a party] should be required to go in answering interrogatories." *Weber v. Biddle,* 72 Wn.2d 22, 29, 431 P.2d 705 (1967). The trial court here appropriately exercised this discretion.

■ Finally, CR 33(c) is an exception carved into the policy behind the civil rules promoting liberal discovery between the parties encouraging pretrial settlement of claims. While CR 33(c) should remain efficacious, it should not be used to circumvent the underlying policy of discovery before trial.

■ We turn next to the issue cross–petitioned by plaintiff. It is contended CR 33(b) allows discovery of claims arising subsequent to May 12, 1970. CR 33(b) allows use of interrogatories to ascertain information discoverable under CR 26(b)(1) which states, in pertinent part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This court has had occasion to define CR 26(b) in the products liability context in the case of *Bushman v. New Holland Div. of Sperry Rand Corp.*, 83 Wn.2d 429, 518 P.2d 1078 (1974). There a haro–bed manufactured by the defendant was responsible for the death of the plaintiff's husband. Interrogatories sought to ascertain information regarding tests, records of injuries and lawsuits resulting from accidents involving that model of equipment. We stated the test of allowable discovery matter to be:

> The only limitation is relevancy to the subject matter involved in the action, not to the precise issues framed by the pleadings; and inquiry as to any matter which is or may become relevant to the subject matter of the action should be allowed, subject only to the objection of privilege. *Felix A. Thillet, Inc. v. Kelly–Springfield Tire Co.*, 41 F.R.D. 55 (D.P.R. 1966). The test in determining relevancy of interrogatories is whether the testimony sought may reasonably be expected to lead to the discovery of admissible evidence.

*Bushman v. New Holland Div. of Sperry Rand Corp.*, *supra* at 434.

Defendant Bristol is intimately aware of the application of these principles in relation to their products. In *Farnum v. Bristol–Myers Co.*, 107 N.H. 165, 219 A.2d 277 (1966), the New Hampshire Supreme Court was called upon to answer the specific question presented here relative to a deodorant manufactured by Bristol–Myers Company. That court held, at pages 167–68:

> [W]e think that the scope of permissible discovery in this case should not be confined to complaints made before the date of the plaintiff's purchase, as suggested by the defendant. Evidence that complaints were made after April 1957 may well be material and competent upon the question of whether harm was probably caused by an ingredient of the product, rather than as the result of abnormal susceptibility on the part of the complainant.

Defendant Bristol seeks to distinguish the *Farnum* facts from this case. It argues that, since Bristol adequately warned users of the potentially dangerous propensities of Kantrex, it is shielded from strict liability under the

Restatement (Second) of Torts § 402A, comment *k* (1965). While that comment does offer protection to a manufacturer who *adequately* warns users of possible adverse effects, the issue of adequacy of the warning has not yet been litigated so as to exculpate Bristol. Further, evidence may be discovered which may be admissible on the issue of causation or which will lead to the discovery of such evidence. *Bushman v. New Holland Div. of Sperry Rand Corp., supra.* However, we need not rule on admissibility at this time because that is not the determining factor in establishing the scope of discovery.

The trial court is affirmed as to the petition and reversed on the cross petition.

WRIGHT, C.J., ROSELLINI, HAMILTON, STAFFORD, and HICKS, JJ., and RYAN, J. Pro Tem., concur.

UTTER, J. (dissenting)—I dissent. CR 33(c), added to our discovery rules in 1972, is a direct copy of revisions made earlier to the Federal Rules of Civil Procedure effective July 1, 1970. The history of those rules illustrates they were enacted to deal with the situation where interrogatories require a party to engage in burdensome or expensive research into their own business records in order to give an answer. The Advisory Committee's Note on the federal rules revision states:

> The subdivision gives the party an option to make the records available and place the burden of research on the party who seeks the information. "This provision, without undermining the liberal scope of interrogatory discovery, places the burden of discovery upon its potential benefitee," Louisell, *Modern California Discovery,* 124–125 (1963), and alleviates a problem which in the past has troubled Federal courts. See Speck, *The Use of Discovery in United States District Courts,* 60 Yale L.J. 1132, 1142–1144 (1951).

48 F.R.D. 487, 524 (1970).

Respondent's principal argument for requiring petitioner to conduct the search was that she had "limited resources"

to conduct her own search of the record. The term "burden" used in the comments refers to feasibility of search, not financial cost. No case indicates financial ability is the "burden" referred to in CR 33(c) and the Advisory Committee's Note shows those who drafted the rule contemplated placing the onus of discovery on the one who benefited from it. Where, as here, the father of the minor is a practicing physician, I believe it violates the spirit of the rule to require petitioner to sift through its own records to make respondent's case. Respondent minor's father has the education to equip him to ascertain the required information. This is not a case of abuse of trial court discretion but simply exercise of discretion in an area where none is permitted by the rule.

BRACHTENBACH, J., concurs with UTTER, J.