[No. 40531-8-II.   Division Two.   February 22, 2012.]

DAVE JOHNSON INSURANCE, INC., ET AL., *Respondents*, v. JOHN H. WRIGHT, *Appellant*.

762

*Jeffrey A. Damasiewicz* (of *Phillips Krause & Brown*), for appellant.

*Thomas A. Brown* (of *Brown Lewis Janhunen & Spencer*), for respondents.

¶1 VAN DEREN J. — David Johnson hired his son-in-law, John Wright, to help him run Johnson's new insurance

agency. When relations between the two soured, Wright quit and took with him Johnson's personal insurance policies that Johnson had given to Wright so Wright could use the proceeds from the policies to buy the insurance agency should Johnson die. Johnson, with his wife and the agency (collectively the Johnsons), sued Wright for return of the policies, and Wright counterclaimed for compensation from the agency that Johnson allegedly promised but did not pay. Following a bench trial, the trial court ordered Wright to return the policies to Johnson and ordered Johnson to reimburse Wright for the premiums that Wright had paid thereon. The trial court also awarded the Johnsons fees and costs for Wright's frivolous counterclaim and defense. Wright appeals, arguing in part that the trial court improperly added a return provision to the parties' buy and sell agreement, applied an incorrect interest rate, and improperly awarded fees and costs to the Johnsons. We hold that (1) the trial court did not err in ordering the return of the insurance policies to Johnson, (2) the trial court imposed an erroneous interest rate on Johnson's reimbursement payments to Wright, and (3) the Johnsons are entitled to statutory costs and fees only. We affirm in part, reverse in part, and remand.

## FACTS

¶2 In Spring 1998, David Johnson hired his son-in-law, Wright, to help with Johnson's newly formed business enterprise, Dave Johnson Insurance Inc., a Washington corporation located in Aberdeen. Johnson had extensive insurance experience and, although Wright had no similar experience, Johnson believed that Wright could contribute needed bookkeeping, accounting, and computer skills. Wright began his employment as the corporation's book-

keeper, but his job title changed to agency manager after he was properly licensed as an insurance agent.[1]

¶3 Johnson's intention in hiring his son-in-law was that Wright would ultimately become the agency's "perpetuation" or successor to the business. Clerk's Papers (CP) at 104. On August 20, 2001, the corporation and its principal shareholders, David and Beverly Johnson, entered into a buy and sell agreement with Wright regarding the corporation. This agreement provided Wright with a right of first refusal in the event of David Johnson's death or incompetency, and it also provided an express method of valuation for the business. The agreement provided that Wright's purchase of the business could be funded by life insurance. The agreement also provided that "if [Wright] shall cease employment with the corporation, this agreement shall become null and void." CP at 114.

¶4 Contemporaneous with the buy and sell agreement, Johnson transferred two personal life insurance policies providing payment of $100,000 each in the event of Johnson's death to Wright. Johnson testified at trial why he did so, explaining that Wright was "continually complaining about not having any money" and, thus, Johnson believed that Wright lacked the financial means to execute the buy and sell agreement in the event of Johnson's death.[2] Report of Proceedings (RP) (Nov. 3, 2009) at 80. Johnson said that he transferred his existing life insurance policies to Wright for the purpose of giving Wright the financial ability to execute the buy and sell agreement if Johnson died; and that he specifically told Wright that was the reason for transferring the policies.

---

[1] Wright worked for the corporation from April 1998 until June 2005, and the trial court found that Wright was "very well remunerated." Report of Proceedings (Nov. 5, 2009) at 315. Wright started with an agreed annual compensation in 1998 of $36,000; but his compensation grew to $40,000 the following year, to $85,000 by 2003, and to $106,000 by 2004.

[2] Johnson explained that his existing personal life insurance policies had been purchased long before his health had deteriorated and that new policies insuring Johnson's life would be prohibitively expensive.

¶5 Johnson testified that he and Wright had "a clear understanding" that the transfer of Johnson's life insurance policies to Wright was for the purpose of funding the buy and sell agreement, and for that purpose only. RP (Nov. 3, 2009) at 85. Johnson vehemently rejected any suggestion that the transfer of the insurance policies to Wright was a gift, a "thank you," for Wright's efforts in building the agency. RP (Nov. 3, 2009) at 82.

¶6 Wright testified that Johnson transferred the life insurance policies to him within a month of their execution of the agency buy and sell agreement, that the two policies were worth $100,000 each, and that "Mr. Johnson stated to me that these [policies] were his gift to me." RP (Nov. 4, 2009) at 109.

¶7 By the beginning of 2005, Johnson and Wright's relationship had deteriorated. Johnson testified that Wright constantly complained that he was not being paid enough. In March, Wright and Johnson got into an argument; Wright told Johnson that Johnson could no longer have any contact with Johnson's daughter or grandchildren (Wright's wife and children). Johnson then demoted Wright from agency manager to an agency employee.

¶8 On March 29, the corporation and Wright entered into an employment agreement that provided for certain duties for Wright as a corporate agent. This agreement provided that either party could terminate the agreement. The agreement also required Wright, upon termination of employment, to return all confidential information belonging to the corporation.[3]

¶9 Wright resigned on June 20, 2005. Wright did not return the insurance policies when Johnson requested that he do so. David and Beverly Johnson and the corporation (referred to collectively hereafter as the Johnsons) sued

---

[3] The employment agreement required the agent upon termination of employment to return all materials, documents, notes, manuals, and lists relating directly or indirectly to the business of Johnson Insurance.

Wright to recover the insurance policies and some other items that Wright allegedly took from the business.[4] The Johnsons' complaint sought in part a judgment declaring that the insurance policies were the property of the corporation and directing Wright to transfer ownership of the policies to the corporation. Wright filed a counterclaim seeking damages, contending that Johnson fraudulently induced him to leave his home and job in another state and come to Washington to work for the corporation.[5] Contending that Johnson did not fully perform to the extent promised, Wright asserted claims for breach of contract, fraud, promissory estoppel, detrimental reliance, unjust enrichment, and quantum meruit.

¶10 During a three-day bench trial, Johnson and Wright testified as described above. Johnson also testified that he and Wright never discussed what would happen to the insurance policies if Wright's employment terminated. Johnson admitted that neither the buy and sell agreement nor the employment agreement expressly required Wright to transfer ownership of the insurance policies in the event that Wright's employment terminated.

¶11 The trial court made oral and written findings and conclusions. Noting that the case turned on "credibility and

---

[4] Wright allegedly failed to return corporate artwork and foreign language tapes, and used corporate vacation "points" without permission after his termination. CP at 3. Wright filed a partial summary judgment motion, seeking dismissal of all the Johnsons' claims. At the summary judgment hearing, the Johnsons' counsel acknowledged that the Johnsons' claims, except for the return of the insurance policies, were "de minimis," and that he had made no argument regarding those claims in response to Wright's summary judgment motion. RP (Sept. 28, 2009) at 31. The trial court denied Wright's summary judgment motion, thereby keeping the Johnsons' de minimis claims alive. Nevertheless, the arguments in the Johnsons' subsequent trial memorandum focused exclusively on the insurance policies. And, at the beginning of trial, Johnson's counsel advised the court that the trial was "about the insurance policies only." RP (Nov. 3, 2009) at 35. Thus, the Johnsons appear to have ultimately abandoned their admittedly de minimis claims during trial and the issues are not raised on appeal.

[5] Wright contended that Johnson promised to eventually sell him the agency, pay Wright's moving expenses, employ Wright as a business manager at no less than $50,000 per year, give Wright half of all profits, provide health benefits (medical, dental, and vision coverage), and give Wright half of all commissions on policies that Wright sold.

the intent of the parties," the court ruled that Johnson's transfer of the insurance policies on his life was not a gift to Wright but, rather, the parties intended them to serve as a source of funds to enable Wright to purchase the agency in the event of Johnson's death. RP (Nov. 5, 2009) at 310. The court specifically ruled that Wright's testimony to the contrary was not credible.

¶12 The court also dismissed Wright's counterclaims as without merit, again noting that Wright's testimony was not credible. The court ruled that the insurance policies at issue had been Johnson's personal policies, rather than corporate assets and, thus, would be returned to Johnson. The court ordered Wright to return the insurance policies to Johnson, and it ordered Johnson to reimburse Wright for any premiums that Wright had paid on the policies, with interest.

¶13 After the trial court entered judgment, the Johnsons moved for an award of costs and attorney fees under RCW 4.84.185. The trial court found that Wright's defenses and allegations in his counterclaim were "frivolous and advanced without reasonable cause," and it awarded the Johnsons their attorney fees and costs as the prevailing party. CP at 370. Wright appeals.

## ANALYSIS

### I. Return of Insurance Policies and Repayment of Premiums

¶14 This case largely turns on the initial inquiry: Whether there was any agreement (written or oral) between the parties requiring Wright to return the insurance policies in question to Johnson in the event of Wright's employment termination. For the reasons we discuss below, we affirm the trial court's order requiring Wright to return the insurance policies to Johnson and requiring Johnson to reimburse Wright for premiums paid on the policies while in his possession.

A. The Written Agreements

¶15 The touchstone of contract interpretation is the parties' intention, which we attempt to determine by focusing on the agreement's objective manifestations. *State v. R.J. Reynolds Tobacco Co.*, 151 Wn. App. 775, 783, 211 P.3d 448 (2009), *review denied*, 168 Wn.2d 1026 (2010). We give words their ordinary, usual, and popular meaning unless the entirety of the agreement evidences a contrary intent. *R.J. Reynolds Tobacco Co.*, 151 Wn. App. at 783. If relevant for determining mutual intent, we may use surrounding circumstances and other extrinsic evidence to determine the meaning of specific words and terms used, but not to show an intention independent of the instrument or to vary, contradict, or modify the written word. *R.J. Reynolds Tobacco Co.*, 151 Wn. App. at 783. When interpretation depends on factual determinations such as the credibility of extrinsic evidence or a choice among reasonable inferences to be drawn from extrinsic evidence, we review the fact finder's determinations of such matters for substantial evidence. *Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222 (1990); *cf. Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 676 n.9, 929 P.2d 510 (1997) (findings of fact are reviewed to determine whether substantial evidence supports them; "review is deferential and entails acceptance of factfinder's views regarding credibility of witnesses and weight to be given reasonable but competing inferences"). Otherwise contract interpretation is a question of law, which we review de novo. *Berg*, 115 Wn.2d at 668; *Keystone Masonry, Inc. v. Garco Constr., Inc.*, 135 Wn. App. 927, 932, 147 P.3d 610 (2006) (absent disputed facts, the legal effect of a contract is a question of law we review de novo).

¶16 Here, the Johnsons and Wright relied on extrinsic evidence at trial to support their view regarding the purpose and intent of the parties when Johnson transferred his life insurance policies to Wright. As noted, Johnson testified

that he and Wright had "a clear understanding" that the transfer was for the sole purpose of providing a vehicle for Wright to use to buy the business in the event of Johnson's death. RP (Nov. 3, 2009) at 85. Wright testified that Johnson told him the policies were a gift. The trial court found Wright's testimony not credible.

¶17 Wright first contends that by ordering him to return the insurance policies to Johnson, the trial court improperly added a return provision to the parties' written agreements. He cites *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 115 P.3d 262 (2005), and *Oliver v. Flow International Corp.*, 137 Wn. App. 655, 155 P.3d 140 (2006), for the proposition that such additions to written agreements are improper. In *Hearst*, our Supreme Court clarified confusion generated by its earlier decision in *Berg*, which adopted the "context rule" interpretation of contracts. *See Hearst*, 154 Wn.2d at 502 (discussing *Berg*). The *Hearst* court explained that despite the use of extrinsic evidence to determine the parties' mutual intent as authorized in *Berg*, "Washington continues to follow the objective manifestation theory of contracts." *Hearst*, 154 Wn.2d at 503.

¶18 The *Oliver* court applied *Hearst*, stating, "[W]e 'impute an intention corresponding to the reasonable meaning of the words used,' and 'give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent.' " *Oliver*, 137 Wn. App. at 659 (quoting *Hearst*, 154 Wn.2d at 503-04). " 'We do not interpret what was intended to be written but what was written.' " *Oliver*, 137 Wn. App. at 659 (quoting *Hearst*, 154 Wn.2d at 504). "To prove the intent of contracting parties, a party may offer extrinsic evidence of the context surrounding an instrument's execution." *Oliver*, 137 Wn. App. at 660 (citing *Berg*, 115 Wn.2d at 667). "But extrinsic evidence is relevant only to determine the meaning of specific words and terms used, not to show an intention independent of the instrument or to vary, contradict or modify the written word." *Oliver*, 137 Wn. App. at 660 (citing *Hearst*, 154 Wn.2d at 503).

¶19 Wright contends that *Oliver* is directly applicable here, in that the trial court imposed a term not found in either of the parties' agreements. Wright is correct in that neither the employment agreement nor the buy and sell agreement contains a provision requiring Wright to deliver the insurance policies on Johnson's life to Johnson in the event of Wright's employment termination. The only return provision available appears in the employment agreement, requiring an agent to return the corporation's confidential information (materials, lists, etc.) to the corporation upon employment termination. As noted, the trial court determined that the insurance policies at issue were Johnson's personal policies. Accordingly, the employment agreement's provision for return of corporate confidential information does not apply here. Moreover, neither the buy and sell agreement nor the employment agreement mention the insurance policies' transfer, thus the trial court did not err in refusing to rely on the written agreements to resolve this dispute.

B. The Oral Agreement

¶20 The Johnsons argue that the trial court's ruling recognizes that Wright and Johnson entered into a separate oral agreement reflecting the purpose of the insurance policies' transfer from Johnson to Wright, which was solely to fund the buy and sell agreement. The Johnsons rely on *Barber v. Rochester*, 52 Wn.2d 691, 698, 328 P.2d 711 (1958), which states:

> People have the right to make their agreements partly oral and partly in writing, or entirely oral or entirely in writing; and it is the court's duty to ascertain from all relevant, extrinsic evidence, either oral or written, whether the entire agreement has been incorporated in the writing or not. That is a question of fact.[6]

---

[6] Johnson also cites without discussion the following cases: *Ban-Co Investment Co. v. Loveless*, 22 Wn. App. 122, 587 P.2d 567 (1978); *Diel v. Beekman*, 1 Wn. App. 874, 465 P.2d 212 (1970); *Black v. Evergreen Land Developers, Inc.*, 75 Wn.2d 241,

¶21 Here, the buy and sell agreement contains no integration clause. And Johnson transferred the policies to Wright the same day that they signed the buy and sell agreement without further writing, thus, the parties' intent at the time the policies were transferred forms the basis of the agreement regarding the life insurance policy transfer to Wright. "Whether the oral agreement is viewed conceptually as a separate 'collateral contract' or as a 'partially integrated contract' with one part oral and the other part written, the intent of the parties is the critical fact to be ascertained." *Ban-Co Inv. Co v. Loveless*, 22 Wn. App. 122, 130, 587 P.2d 567 (1978) (citations omitted).

¶22 Here, Johnson testified (1) he intended for Wright to use the proceeds from the policies to buy the agency should Johnson die; (2) he *told* Wright that providing funding so Wright could purchase the agency under the buy and sell agreement was the purpose of transferring the policies; and (3) he and Wright had a "clear understanding" that the policy transfer was to fund the buy and sell agreement and was "for that need, and that need only." RP (Nov. 3, 2009) at 85. The trial court found Wright's contrary testimony to be not credible. Thus, although Johnson admitted at trial that he and Wright never discussed what would happen to the

---

450 P.2d 470 (1969); and *Dix Steel Co. v. Miles Construction, Inc.*, 74 Wn.2d 114, 443 P.2d 532 (1968). All of these cases quote the noted passage from *Barber*, or cite to *Barber*. *See Black*, 75 Wn.2d at 249; *Dix*, 74 Wn.2d at 119; *Ban-Co Inv. Co.*, 22 Wn. App. at 129-30; *Diel*, 1 Wn. App. at 879-80. All address the parol evidence rule in the context of partial integration. For instance, *Black* states:

The doctrine [of partial integration] recognizes the right of contracting parties to reduce some provisions of their contract to written form and to leave others unwritten, trusting the latter to oral expression only. The provisions not in writing may be proved by parol insofar as they are not inconsistent with the written portion.

75 Wn.2d at 249 (citing *Barber*, 52 Wn.2d 691). Whether the agreement is partially integrated or fully integrated, the parol (extrinsic) evidence cannot contradict the written portion of the agreement. *Black*, 75 Wn.2d at 249. *Thornton v. Interstate Sec. Co.*, 35 Wn. App. 19, 30 n.2, 666 P.2d 370 (1983) (parol evidence that contradicts the written instrument "cannot be given substantive effect"). *See also Brogan & Anensen, LLC v. Lamphiear*, 165 Wn.2d 773, 775, 202 P.3d 960 (2009) (parol evidence rule precludes the use of extrinsic evidence to add to, subtract from, modify, or contradict the terms of a fully integrated written contract; that is, a contract intended as a final expression of the terms of the agreement).

insurance policies if Wright's employment terminated, because the intent and purpose of the transfer failed by Wright's leaving the agency, the trial court did not err in concluding that the parties' purpose (intent) as articulated in Johnson's testimony controlled and the policies should be returned to Johnson.

C. Constructive Trust as Equitable Remedy for Unjust Enrichment

¶23 At the March 1, 2010 hearing for entry of the written findings and conclusions, the court stated, "[M]y whole purpose in this thing was to be fair." RP (Mar. 1, 2010) at 322. The Johnsons presented the trial court with an alternative theory of recovery under constructive trust as the evidence developed at trial. The Johnsons' attorney raised the issue of constructive trust before Wright's testimony and again before the court's oral ruling.

██ ██ ¶24 We may sustain the trial court's judgment on any theory the pleadings establish and the proof supports. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 344, 883 P.2d 1383 (1994).[7] " 'A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' " *Baker v. Leonard*, 120 Wn.2d 538, 547-48, 843 P.2d 1050 (1993) (quoting *Proctor v. Forsythe*, 4 Wn. App. 238, 242, 480 P.2d 511 (1971)). Unjust enrichment occurs when one retains money or benefits that in justice and equity belong to another. *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 160, 810 P.2d 12 (1991). The doctrine also applies to retention of property or benefits. *Bailie*, 61 Wn. App. at 160.

---

[7] Although constructive trust was not mentioned in the Johnsons' complaint, that theory was presented at trial. We note that while the Johnsons' attorney should have moved to amend the pleadings to conform to the evidence as developed at trial, that failing does not foreclose us from considering the constructive trust issue. *See* CR 15(b) ("failure so to amend does not affect the result of the trial" regarding issues not formally raised in pleadings but resolved at trial).

¶25 A court can impose a constructive trust arising in equity when clear, cogent, and convincing evidence serves as the basis for the decision. *Baker*, 120 Wn.2d at 547. Evidence is clear, cogent, and convincing if it shows that the ultimate fact in issue is highly probable. *In re Estate of Watlack*, 88 Wn. App. 603, 610, 945 P.2d 1154 (1997). Although constructive trusts are most appropriate in situations involving fraud, misrepresentation, or undue influence, courts can impose them in broader circumstances not involving wrongdoing. *Baker*, 120 Wn.2d at 547. Our Supreme Court explicitly noted in *Baker* that in circumstances where fraud or wrongdoing are absent, courts must find an "equitable base" established by evidence of intent before imposing a constructive trust. *Baker*, 120 Wn.2d at 548.

¶26 Our Supreme Court outlined the lengthy history of disputed oral agreements giving rise to constructive trusts in *Kausky v. Kosten*, 27 Wn.2d 721, 179 P.2d 950 (1947). It held that "[t]he rule adopted by this court is that constructive and resulting trusts may be established by evidence of oral agreements, but that express trusts cannot be so proved." *Kausky*, 27 Wn.2d at 727.

¶27 In this case, the trial court found clear, cogent, and convincing evidence that the parties' purpose (intent) in transferring the life insurance policies to Wright was to assist Wright in buying the agency should Johnson die; and that such transfer was not a gift.[8] When Wright kept the policies after leaving the company and having a falling out with Johnson, Wright was unjustly enriched. The Johnsons do not allege that Wright committed any fraud or wrongdoing but assert that an equitable solution is warranted given Johnson's expressed intent and the parties' understanding about the purpose behind the policies' transfer. We agree.

¶28 Based on the trial evidence, the trial court fashioned an equitable remedy intended to avoid unjust enrichment to

---

[8] The trial court based its findings on "the clear facts established at trial." CP at 277.

either party, ordering Wright to return the personal life insurance policies to Johnson, and ordering Johnson to reimburse Wright for the premiums that Wright had paid on the policies while in his possession. With regard to repayment of premiums that Wright paid to keep the policies in force, the trial court stated, "[I]t would be unjust enrichment to Mr. Johnson to receive [the policies] and deprive Mr. Wright of his income," which Wright had used to pay the premiums. RP (Nov. 5, 2009) at 316.

¶29 Thus, we hold that the trial court did not err in providing an equitable remedy requiring Wright to return the life insurance policies to Johnson and requiring Johnson to reimburse Wright for premium payments.

## II. REIMBURSEMENT INTEREST RATE

¶30 Wright next contends that the trial court erred by not imposing the prejudgment statutory interest rate of 12 percent on Johnson's reimbursement payments. We agree.

¶31 The Johnsons' attorney argued that the appropriate interest rate should reflect the interest rate available to Wright when Wright paid the insurance premiums. Wright's attorney argued that Johnson should pay the statutory rate of 12 percent. The trial court applied the interest as the Johnsons proposed, noting it was "fair." RP (Mar. 1, 2010) at 322.

¶32 We review a trial court's award of prejudgment interest for an abuse of discretion. *Scoccolo Constr., Inc. v. City of Renton*, 158 Wn.2d 506, 519, 145 P.3d 371 (2006). Such abuse occurs when the trial court takes a view no reasonable person would take or applies the wrong legal standard to an issue. *Cox v. Spangler*, 141 Wn.2d 431, 439, 5 P.3d 1265, 22 P.3d 791 (2000).

¶33 In *Schrom v. Board for Volunteer Fire Fighters*, 153 Wn.2d 19, 36, 100 P.3d 814 (2004), our

Supreme Court held that RCW 19.52.010[9] mandates 12 percent prejudgment interest when the parties have not agreed on some other rate.[10] In *Schrom*, parties who had paid annual fees for a pension plan but were later determined to be ineligible for the pension had to be reimbursed the amount of their payments plus interest. 153 Wn.2d at 22-24. The pension board contended that while it would reimburse all payments, it was not required to also pay "the normal 12 percent prejudgment statutory interest." *Schrom*, 153 Wn.2d at 35. Our Supreme Court rejected the board's contention, noting that "such a view undercuts RCW 19.52.010, which mandates 12 percent interest is required when no other rate was agreed between the parties for '[e]very loan or forbearance of money, goods, or thing in action.'" *Schrom*, 153 Wn.2d at 36. In *Schrom*, the payors of the annual fees were "entitled to reimbursement of all coverage fees paid augmented by the 12 percent annual statutory rate of return." *Schrom*, 153 Wn.2d at 36.

¶34 Here, there is no evidence of any agreed interest rate. Thus, under *Schrom*, the correct prejudgment interest rate to be applied to the reimbursement payments was 12 percent. The trial court did not apply the appropriate legal standard (*Schrom*) and thus abused its discretion, and we

---

[9] RCW 19.52.010(1) provides in relevant part, "Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties."

[10] That interest rate applies to any "liquidated" claim; defined as an amount capable of determination without recourse to opinion or discretion. *Austin v. U.S. Bank of Wash.*, 73 Wn. App. 293, 312-13, 869 P.2d 404 (1994). Even in the dissolution context, where the trial court is authorized to impose an interest rate below the 12 percent statutory rate, as the court in its discretion deems warranted, the court must state its reasons for doing so and the failure to provide such reasons is an abuse of discretion. *See In re Marriage of Davison*, 112 Wn. App. 251, 259, 48 P.3d 358 (2002); *In re Marriage of Harrington*, 85 Wn. App. 613, 630-31, 935 P.2d 1357 (1997). Simply declaring that a reduced rate (i.e. under the 12 percent statutory rate) imposed is "fair" is insufficient, and the trial court here stated no other reason for the interest rate imposed. *See Harrington*, 85 Wn. App. at 632 ("We reject any notion that it is the task of an appellate court to search the record for any reasons which may or may not have justified the trial court's exercise of discretion.").

reverse and remand for calculation of interest owed at 12 percent per annum under RCW 19.52.010(1).

## III. DISCOVERY INTERROGATORIES

¶35 Wright next contends that the trial court erred in compelling him to answer certain interrogatories during pretrial discovery. We disagree.

> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

*Lurus v. Bristol Labs., Inc.*, 89 Wn.2d 632, 636, 574 P.2d 391 (1978) (alteration in original) (quoting CR 26(b)(1)). Moreover, " 'The trial court is given reasonable discretion in determining how far [a party] should be required to go in answering interrogatories.' " *Lurus*, 89 Wn.2d at 636 (alteration in original) (quoting *Weber v. Biddle*, 72 Wn.2d 22, 29, 431 P.2d 705 (1967)). A reviewing court will not disturb the trial court's determination on the appropriate scope of interrogatory answers unless there has been an abuse of discretion and unless the error is prejudicial. *Weber*, 72 Wn.2d at 29.

¶36 Here, the trial court went through each of the interrogatories to which Wright objected and ruled on each. The trial court answered most of Wright's counsel's questions, clarified the scope of appropriate answers to the interrogatories, limiting some, and explained to Wright's counsel that he did not have to provide attorney work product. Wright does not show that the trial court abused its discretion or that he suffered any resulting prejudice from the trial court's discovery rulings. Accordingly, we hold that the trial court did not abuse its discretion with regard to the discovery issues.

IV. CHALLENGED FINDINGS AND CONCLUSIONS

¶37 Wright challenges the trial court's findings of fact 4 through 8, 11, and 12; and conclusions of law 2 through 8. We review challenged findings for "substantial evidence," defined as the quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Our review is deferential; we view the evidence and all reasonable inferences in the light most favorable to the prevailing party. *Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006). When a trial court bases its findings of fact on conflicting evidence and there is substantial evidence to support the findings entered, we do not reweigh the evidence and substitute our judgment even though we might have resolved the factual dispute differently. *Callecod*, 84 Wn. App. at 676 n.9; *Brown v. Superior Underwriters*, 30 Wn. App. 303, 305-06, 632 P.2d 887 (1980). We review challenged conclusions of law de novo, considering whether the findings of fact support them. *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 555, 132 P.3d 789 (2006). We also review a conclusion of law, which a party has erroneously described as a finding of fact, as a conclusion of law; and we review a finding of fact, which a party has erroneously described as a conclusion of law, as a finding of fact. *See Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

¶38 Finding 4 states that Wright's claims that he was tricked by Johnson's promises to come to Washington, and that Wright did not receive what he was promised are without factual basis. Wright points to his own testimony that Johnson offered him a $50,000 starting salary and other promises to induce Wright to come to Washington and that Johnson failed to deliver all that was promised. But the trial court expressly ruled that Wright's testimony was not

credible. We must defer to that determination. *Callecod*, 84 Wn. App. at 676 n.9.[11]

¶39 Finding 5 states that on August 20, 2001, all the parties entered into a buy and sell agreement that provided certain rights of succession to Wright in the event of Johnson's death or incompetence; the agreement could be funded by life insurance, and the agreement would be null and void if Wright ceased employment. The text of the buy and sell agreement supports this finding.

¶40 Finding 6 states that on March 29, 2005, the corporation and Wright entered into an employment agreement that provided for certain duties of Wright as a corporate agent, either party could terminate the agreement, and the agreement required Wright to return "all property" owned by the corporation after employment termination. CP at 276. The employment agreement text so reflects, except that it provides only that the corporation's confidential information and business materials be returned.[12] Substantial evidence does not support the portion of finding 6 stating that "all property" must be returned to the corporation.

¶41 Finding 7 states that Johnson transferred life insurance policies to Wright to fund the buy and sell agreement in the event of Johnson's death, and that the parties' purpose in transferring the policies was to enable Wright to buy the agency in the event of Johnson's death, and not to provide a gift to Wright. Johnson testified to this fact and the trial court found Wright's contrary testimony not credible, thus the evidence supports the trial court's finding.

¶42 Finding 8 states that Wright's position that the policies were a gift is illogical and contradicts the facts

[11] Wright similarly relies on his own testimony to challenge findings 7 and 8. But again we must defer to the trial court's determination that Wright's testimony was not credible. *Callecod*, 84 Wn. App. at 676 n.9.

[12] The employment agreement required the agent upon termination of employment to return to the corporation all materials, documents, notes, manuals, and lists relating directly or indirectly to the business of Johnson Insurance.

established at trial. Johnson's testimony supports this finding.

¶43 Findings 11 and 12 state that the Johnsons' claims for return of the corporation's artwork and foreign language programs, as well as the claim for Wright's unauthorized use of vacation points after his resignation, "have been resolved outside this lawsuit, and those claims are not before the [c]ourt." CP at 278. Wright argues that these claims were not *resolved* as the findings indicate, but they were in fact abandoned at trial by the Johnsons. Indeed, these claims are not argued in the Johnsons' trial brief.[13] The Johnsons respond that "it was established at the outset of trial by both counsel that these issues were resolved." Br. of Resp't at 36 (emphasis omitted). But all of the Johnsons' claims other than return of the insurance policies indeed appear to have been abandoned. The Johnsons' counsel stated that the unargued claims were "de minimis." RP (Sept. 28, 2009) at 31. And at the beginning of trial, the Johnsons' counsel advised the court that the trial "is about the insurance policies only" and that the Johnsons' other claims "have been resolved one way or the other." RP (Nov. 3, 2009) at 35. Wright's counsel responded that he was glad to hear that all of the Johnsons' other claims were gone. Accordingly, all of the Johnsons' claims, other than the claim for return of the insurance policies, appear to have been abandoned. In any event, whether the Johnsons' other claims were "resolved" or "abandoned," they were clearly "not before the court" as findings 11 and 12 correctly state.

¶44 As for the conclusions of law, conclusion of law 2 states that the parties' purpose in transferring the life insurance policies from Johnson to Wright was to enable Wright to buy the agency in the event of Johnson's death, and not to provide a gift to Wright. Findings 5, 7, and 8 support this conclusion.

---

[13] The only possible reference to these claims appears in a line in the conclusion that states, "In addition, at trial, Defendant Wright should be ordered to return any other property owned by the Plaintiffs, including records of the business." CP at 238.

¶45 Conclusion of law 3 states that the parties' purpose in transferring the life insurance policies from Johnson to Wright was not to make a gift to Wright, the claim that the transfer was a gift is without merit, and Wright's testimony to the contrary is not credible. Finding 8 supports this conclusion.

¶46 Conclusion of law 4 states that Wright should return the policies and any related materials to Johnson and that Wright should execute all documents necessary to transfer ownership of the policies to Johnson. Findings 5, 7, and 8 support this conclusion, along with the reasons we discussed in section I (addressing the return of the insurance policies).

¶47 Conclusion of law 5 states that Johnson should reimburse Wright for the premiums that Wright paid on the policies plus a reasonable rate of interest and the Johnsons' proposed blended rate of interest is such reasonable rate. The trial court abused its discretion in reaching this conclusion as discussed above (see section II) and we reverse the trial court's ruling on this issue and remand for recalculation of interest at the statutory rate.

¶48 Conclusion of law 6 states that Wright's counterclaims are without merit and should be dismissed with prejudice. Finding 4 supports this conclusion.

¶49 Conclusion of law 7 states that taxable costs[14] should be awarded to the Johnsons. This conclusion is sustainable for the reasons we discuss below (see section V).[15]

¶50 We hold that substantial evidence supports challenged findings of fact 4, 5, 7, 8, 11, and 12; and those findings support challenged conclusions of law 2, 3, 4, and 6.

---

[14] Taxable costs do not include an award of reasonable attorney fees. *Hall v. Stolte*, 24 Wn. App. 423, 426, 601 P.2d 967 (1979).

[15] Conclusion of law 8 states that the court will sign a judgment in accordance with the findings and conclusions. This conclusion is essentially an administrative directive.

But, as we noted, finding of fact 6 is not supported by the evidence, and conclusion of law 5 is erroneous for the reasons discussed in section II of this opinion. But the lack of evidence supporting finding of fact 6 has no bearing on our resolution of the disputed issues on appeal.

## V. Prevailing Party—RCW 4.84.330

¶51 Wright next contends that the trial court erred in determining that the Johnsons were the prevailing party for purposes of attorney fees under RCW 4.84.330.[16] Although this suit began as a contract enforcement action, when the Johnsons sued for return of the insurance policies as corporate property under the written employment agreement, the trial court (and this court) resolved the case on equitable grounds. Accordingly, because the case is not resolved on the basis of enforcing a written contract provision, RCW 4.84.330, with its provision for reasonable attorney fees, has no application here. Thus, for the reasons discussed below, we hold that while Johnson has substantially prevailed, he may recover only statutory fees and costs.

¶52 Whether a party is a "prevailing party" is a mixed question of law and fact that we review under an error of law standard. *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 706, 9 P.3d 898 (2000). The question as to which party substantially prevailed is often subjective and difficult to assess. *Marassi v. Lau*, 71 Wn. App. 912, 917, 859 P.2d 605 (1993), *overruled on other grounds by Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 490-92, 200 P.3d 683 (2009). As a rule, the prevailing party

[16] RCW 4.84.330 provides in relevant part:

In any action on a contract . . . where such contract . . . specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract . . . shall be awarded to one of the parties, the prevailing party . . . shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements [and] "prevailing party" means the party in whose favor final judgment is rendered.

is one who receives an affirmative judgment in its favor. *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997). But if neither party wholly prevails, determining who is the substantially prevailing party depends on the extent of the relief accorded. *Transpac Dev., Inc. v. Young Suk Oh*, 132 Wn. App. 212, 217-19, 130 P.3d 892 (2006); *Marine Enters., Inc. v. Sec. Pac. Trading Corp.*, 50 Wn. App. 768, 772, 750 P.2d 1290 (1988). In *Marassi*, the court concluded that where multiple and distinct claims were at issue, the trial court should take a "proportionality approach." *Marassi*, 71 Wn. App. at 917. But if both parties prevail on major issues, both parties bear their own costs and fees. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 702, 915 P.2d 1146 (1996).

¶53 Here, both the Johnsons and Wright have prevailed on issues. The dual foci at trial were who would get the insurance policies under the Johnsons' declaratory judgment action and whether Wright would prevail on his counterclaims for salary never received. The trial court ordered Wright to return the insurance policies to Johnson, ordered Johnson to reimburse Wright for premium payments plus interest, and ruled against Wright on his counterclaims. In this circumstance, we could direct that each party bear their own costs and fees. *See Phillips Bldg. Co.*, 81 Wn. App. at 702. But given the extent of the relief accorded to Johnson, we hold that the Johnson's are the substantially prevailing party.

¶54 The next question is whether the Johnsons are entitled to actual fees. Because Washington is an "American Rule" jurisdiction, and we affirm on equitable grounds, there is no basis to award the Johnsons their actual fees. Under the American Rule, compensation for attorney fees and costs may be awarded only if authorized by contract, statute, or recognized ground in equity. *In re*

*Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 160, 60 P.3d 53 (2002).[17]

¶55 Washington cases mention four recognized equitable grounds for awards of attorney fees: bad faith conduct of the losing party, preservation of a common fund, protection of constitutional principles, and private attorney general actions. *Dempere v. Nelson*, 76 Wn. App. 403, 407, 886 P.2d 219 (1994), *abrogated on other grounds by Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997). There are three types of bad faith conduct that warrant attorney fees: (1) prelitigation misconduct, (2) procedural bad faith, and (3) substantive bad faith. *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 927, 982 P.2d 131 (1999).

¶56 Prelitigation misconduct refers to obdurate or obstinate conduct that necessitates legal action to enforce a clearly valid claim or right. *Rogerson*, 96 Wn. App. at 927. Procedural bad faith is unrelated to the merits of the case and refers to vexatious conduct during the course of litigation, such as delaying or disrupting proceedings. *Rogerson*, 96 Wn. App. at 928. Substantive bad faith occurs when a party intentionally brings a frivolous claim, counterclaim, or defense *with improper motive. Rogerson*, 96 Wn. App. at 929. In other words, simply bringing a frivolous claim is not enough; there must be evidence of an intentionally frivolous claim brought for the purpose of harassment. *Rogerson*, 96 Wn. App. at 929. None of these criteria are met here. Accordingly, there is no basis for an equitable award of actual attorney fees to the Johnsons. We hold that the Johnsons, as

---

[17] A trial court can award the prevailing party statutory costs and fees under RCW 4.84.010. The statute narrowly defines the costs that a prevailing party may recover. Items that are allowable as costs include filing fees, costs of service of process, notary fees, costs of reports and records as evidence, statutory attorney and witness fees, costs of transcription of depositions used at trial or arbitration, and costs otherwise authorized by law. RCW 4.84.010. But absent a statute expressly permitting expanded cost recovery, plaintiffs are not entitled to costs beyond those enumerated in RCW 4.84.010. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 674, 880 P.2d 988 (1994).

the prevailing party, are limited in this circumstance to statutory fees and costs as provided in RCW 4.84.010.

## VI. AWARD OF FEES FOR FRIVOLOUS ACTION AND DEFENSE— RCW 4.84.185

¶57 Wright next contends that the trial court erred in granting the Johnsons costs and fees under RCW 4.84-.185.[18] We agree.

¶58 RCW 4.84.185 authorizes the trial court to award the prevailing party reasonable expenses, including attorney fees, incurred in opposing a frivolous action. *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 745, 218 P.3d 196 (2009). Such an award is available only when the action as a whole can be deemed frivolous. *McCarthy*, 152 Wn. App. at 746. A lawsuit is frivolous if, when considering the action in its entirety, it cannot be supported by any rational argument based in fact or law. *Curhan v. Chelan County*, 156 Wn. App. 30, 37, 230 P.3d 1083 (2010); *see also Loc Thien Truong v. Allstate Prop. & Cas. Ins. Co.*, 151 Wn. App. 195, 207-08, 211 P.3d 430 (2009) (award of fees under RCW 4.84.185 may be made against a party when the action, viewed in its entirety, cannot be supported by any rational argument on the law or facts); *Goldmark v. McKenna*, 172 Wn.2d 568, 582, 259 P.3d 1095 (2011) (same).[19]

---

[18] RCW 4.84.185 provides in relevant part:

In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, . . . or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, . . . or defense. . . . The judge shall consider all evidence presented at the time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause.

[19] Compare *Goad v. Hambridge*, 85 Wn. App. 98, 105, 931 P.2d 200 (1997), stating:

An appeal is frivolous only "if no debatable issues are presented upon which reasonable minds might differ, and it is so devoid of merit that no reasonable

¶59 We review a trial court's award under RCW 4.84.185 for an abuse of discretion. *McCarthy*, 152 Wn. App. at 746; *see also State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). Such abuse occurs when the trial court takes a view no reasonable person would take, or applies the wrong legal standard to an issue. *Cox*, 141 Wn.2d at 439; *see also Curhan*, 156 Wn. App. at 37 (discretion is abused when it is exercised on untenable grounds or for untenable reasons).

¶60 Here, in defending against the Johnsons' suit for return of the insurance policies, Wright testified that the policies were a gift. In asserting his counterclaim for unreceived compensation, Wright testified that Johnson made promises to him about compensation that Johnson never kept. The trial court found Wright's testimony not credible.

¶61 At the hearing on the Johnsons' postjudgment motion for fees under RCW 4.84.185, the trial court ruled that fees were warranted, analogizing to "the old basic discussion of, [w]hat is pornography? You know it when you see it." RP (Mar. 29, 2010) at 335. The court opined, "What is a frivolous lawsuit [or] defense other than you know it when you see it." RP (Mar. 29, 2010) at 335. Referring to Wright's "deceitfulness," "dishonesty," and "basically false testimony," the trial court opined, "The statute [RCW 4.84.185] applies because a trial court judge observed it happening in that case and that courtroom. And that's what I saw and that's what I heard." RP (Mar. 29, 2010) at 336. This is not the appropriate legal standard.

¶62 As our Supreme Court explained in *Quick-Ruben*, " 'The lawsuit, as a whole, that is *in its entirety*, must be determined to be frivolous and to have been advanced

---

possibility of reversal exists." A party has a right to appeal, and an appeal is not frivolous simply because the party's arguments are rejected. The entire record should be considered, and all doubts should be resolved in favor of the appellant.

(Citations omitted) (quoting *Chapman v. Perera*, 41 Wn. App. 444, 455-56, 704 P.2d 1224 (1985)).

without reasonable cause before an award of attorneys' fees may be made under the statute [RCW 4.84.185].'" 136 Wn.2d at 903 (emphasis added) (quoting *Biggs v. Vail*, 119 Wn.2d 129, 137, 830 P.2d 350 (1992)). Accordingly, "if any claims advance to trial, a trial court's award of fees under RCW 4.84.185 cannot be sustained." *Quick-Ruben*, 136 Wn.2d at 904.

¶63 Here, even if we disregard Wright's testimony, as we must, based on the trial court's credibility determination, the evidence viewed in the light most favorable to Wright nevertheless shows a dispute was ongoing between Wright and Johnson over Wright's compensation. Johnson testified that Wright was continually complaining about not having enough money. Wright's counsel in part argued as much at the hearing on the Johnsons' postjudgment fee motion, correctly noting that Johnson admitted at trial that Wright was continually complaining about his compensation. Wright's counterclaim advanced to trial and evidence other than Wright's testimony supported it. Even though Wright's counterclaim ultimately failed, it cannot be said that it was entirely frivolous. Accordingly, we hold that Wright's counterclaim was not entirely frivolous, the trial court applied the wrong legal standard, and thereby abused its discretion in awarding fees under RCW 4.84.185, and we reverse the award under RCW 4.84.185.

### VII. Attorney Fees on Appeal—RAP 18.1 and RCW 4.84.185

¶64 The Johnsons request an award of attorney fees on appeal under RAP 18.1 and RCW 4.84.185 for having to defend against Wright's allegedly frivolous appeal. An appeal is frivolous if there are no debatable issues on which reasonable minds can differ and is so totally devoid of merit that there was no reasonable possibility of reversal. *In re Recall Concrete Mayor Robin Feetham*, 149 Wn.2d 860, 872, 72 P.3d 741 (2003). But Wright prevails on appeal of the

applicable interest rate and Wright's appeal presents debatable issues. Accordingly, we deny the Johnsons' fee request.

¶65 In sum, we affirm the trial court's rulings that Wright must return the insurance policies to Johnson and that Johnson must reimburse Wright for the premiums he paid on the policies. We reverse the trial court's order on the interest due on the premium payments from Johnson to Wright and remand for imposition of the statutory 12 percent interest rate. We reverse the award of attorney fees to the Johnsons based on their claim that Wright's claims were frivolous and award them only statutory attorney fees and costs under RCW 4.84.010. We deny both parties' requests for further attorney fees on appeal.

PENOYAR, C.J., and WORSWICK, J., concur.

Review denied at 175 Wn.2d 1008 (2012).