# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56878-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TED NATHANIEL JENSEN, | |
| Appellant. | |

CHE, J. — In February 2006, a jury convicted Ted Jensen of one count of first degree assault, one count of felony harassment, and one count of first degree vehicle prowling. The jury found a deadly weapon enhancement on each count. Jensen was originally sentenced with an offender score of 6 on his highest count, and 5 on his remaining counts. Jensen's judgment and sentence has since been amended several times. Jensen appeals his most recent resentencing arguing that the State failed to prove that his 1984 second degree theft conviction did not wash. Jensen raises additional claims in a statement of additional grounds (SAG).

We hold that: (1) the State did not meet its burden in proving Jensen's criminal history and (2) Jensen did not affirmatively acknowledge his prior convictions. We conclude that none of the issues raised in Jensen's SAG have merit or are within our scope of review. Accordingly, we remand the case for resentencing, allowing the State the opportunity to introduce evidence to establish the defendant's criminal history.

FACTS

In February 2006, a jury convicted Ted Jensen of one count of first degree assault, one count of felony harassment, and one count of first degree vehicle prowling. The jury further determined that Jensen was armed with a deadly weapon other than a firearm on each count.

Prior to sentencing, the State filed a sentencing memorandum. The State agreed that the three convictions were the same criminal conduct and therefore were not other current offenses for scoring purposes. The memorandum listed Jensen's prior felony convictions, sentencing date, county, and cause number.[1] The State argued that none of Jensen's felony convictions "wash due to 60+ misdemeanor convictions." Clerk's Papers (CP) at 163. The State listed in its memorandum five of Jensen's misdemeanor convictions that occurred between his 1985 and 1997 felonies, providing the year and a descriptive title of each offense. In its memorandum, the State asserted that

> After the jury's guilty verdicts, the defense agreed with the prosecutor's statement of the defendant's criminal history with three exceptions, which were issues that the defense asked the state to provide documentation in support of: (1) whether the defendant's 1985 felony conviction existed, (2) whether his 1997 VNCO conviction was a felony, and (3) whether the defendant was on community custody at the time he committed the current crimes.

CP at 164. Further, the State asserted that it provided Jensen "certified copies of the judgments and sentences from both the 1985 and 1997 convictions" and that the "only criminal history in

---

[1] Excerpt from state's sentencing memorandum. Clerk's Papers at 163.

| Crime | Sentencing Date | Cause # | |
|---|---|---|---|
| Theft 2 | August 13, 1984 | Whatcom | 84-1-00183-9 |
| VUCSA | October 9, 1985 | Thurston | 85-1-00114-5 |
| VNCO | August 19, 1997 | Thurston | 97-1-01067-9 |
| Att. Res. Burg. | June 1, 2001 | Thurston | 01-1-00511-5 |
| Assault 2 | September 19, 2002 | Thurston | 02-1-01110-5 |

dispute [was] whether the defendant was on community custody at the time he committed the current crimes." CP at 164. In light of Jensen's current and prior offenses, the State argued that Jensen's offender score was 7 and that his sentencing range, including his deadly weapon enhancements, was 226-284 months of total confinement. CP at 166-67.

Subsequently, the sentencing court calculated Jensen's offender score as 6 for the first degree assault and 5 for both the felony harassment and vehicle prowling convictions. The sentencing court did not add a point for committing the current offenses while on community custody. The sentencing court imposed 240 months of total confinement, apparently running each of the deadly weapon enhancements concurrently based on total months of confinement ordered.[2]

Jensen timely appealed his convictions and the State cross appealed. *State v. Jensen*, 144 Wn. App. 1017, 2008 WL 1875945 (2008) (unpublished). The State contended the sentencing court erroneously calculated the offender score by not including a point for community custody in light of *State v. Jones*, 159 Wn.2d 231, 247, 149 P.3d 636 (2006). *Jensen*, 144 Wn. App. at *10. This court vacated Jensen's sentence and remanded to recalculate his offender score and resentence accordingly. *Jensen*, 144 Wn. App. at *15.

In August 2006, the State moved for relief from final judgment. The State argued that the sentencing court did not have authority to enter a judgment and sentence running Jensen's sentence enhancements concurrently. The State asserted that Jensen's sentence must include

---

[2] Jensen had a prior conviction with a deadly weapon enhancement, which required the current deadly weapon enhancements to double in length. RCW 9.94A.533(4)(a), (c), and (d). For the first degree assault, Jensen's subsequent deadly weapon enhancement was 48 months. For the other two offenses, his subsequent deadly weapon enhancements should have been 12 months each, however, Jensen's 2006 judgment and sentence incorrectly reflects 48 months each.

3

three consecutive deadly weapon enhancements. While Jensen's appeal was pending, the sentencing court amended Jensen's judgment and sentence and ordered 264 months of total confinement. The sentencing court explained that Jensen's sentence was comprised of a 192-month base sentence on Count I at 6 points, plus 3 consecutive deadly weapon enhancements comprised of 48 months on Count I, and 12 months each on Counts II and III.

In April 2009, pursuant to this court's remand, the sentencing court filed a second amended judgment and sentence. Jensen's offender score increased to 7 for the assault conviction and 6 for both the felony harassment and vehicle prowling convictions. The sentencing court ordered 255 months of confinement on Count I, 41 months on Count II, and 26 months on Count III. The sentencing court imposed 279 months of total confinement explaining that the confinement time on Count I included a 48 month deadly weapon enhancement and that both Counts II and III included 12 month deadly weapon enhancements.

In November 2021, Jensen filed a CrR 7.8(b) motion requesting to be resentenced with a corrected offender score. Jensen argued that in light of *State v. Blake*, his "offender score include[d] point(s) that should not have been counted in the original score." CP at 69, 197 Wn.2d 170, 481 P.3d 521 (2021). Jensen explained that under *Blake*, his 1985 unlawful possession of a controlled substance (UPCS) conviction was void and should not be included in his offender score. Accordingly, Jensen argued that his new offender score on Count I should be

6 with a standard sentence range of 210 to 264 months,[3] which includes the deadly weapon

enhancement of 48 months. Jensen further argued that his new offender score on Count II would

be 5 with a standard sentence range of 29 to 34 months,[4] which includes a 12 month deadly

weapon enhancement. On Count III, Jensen argued that his new offender score would be 5 with

a standard sentence range of 16 to 24 months,[5] which includes a 12 month deadly weapon

enhancement.

On November 23, 2021, the sentencing court held a sentencing hearing. The State argued

that pursuant to *Blake*, Jensen's offender score is 6, the same score the sentencing court "thought

[Jensen] was being sentenced to at the time of the original sentencing." Rep. of Proc. (RP) at 3.

Accordingly, the State requested that the sentencing court impose the same sentence as originally

---

[3] The standard range for first degree assault with 6 points is 162–216 months. RCW 9.94A.510, 515. The "deadly weapon other than a firearm" enhancement for a class A felony is 24 months. RCW 9.94A.533(4)(a). The "deadly weapon other than a firearm" enhancement is doubled when a defendant has a prior conviction with a deadly weapon enhancement, which Jensen had, for a total of 48 months. RCW 9.94A.533(4)(a) and (d).

[4] The standard range for harassment with an offender score of 5 is 17–22 months. RCW 9.94A.510, 515. The "deadly weapon other than a firearm" enhancement for a class C felony is 6 months. RCW 9.94A.533(4)(c). The enhancement is doubled when, like Jensen, a defendant has a prior conviction with a deadly weapon enhancement, for a total of 12 months. RCW 9.94A.533(4)(c) and (d).

[5] The standard range for first degree vehicle prowling with an offender score of 5 is 4–12 months. RCW 9.94A.510, 515. The "deadly weapon other than a firearm" enhancement for a class C felony is 6 months. RCW 9.94A.533(4)(c). The enhancement is doubled when, like Jensen, a defendant has a prior conviction with a deadly weapon enhancement, for a total of 12 months. RCW 9.94A.533(4)(c) and (d).

ordered in 2006.[6] Jensen sought a mid-range sentence, asking that the court "grant him the 237 months on Count I, instead of the 240 months that the State [was] asking for." RP at 12-13. Jensen further requested that the sentencing court find him indigent, "suspend as much of the fines or fees as possible," and "follow the rest of the recommendation on the other Counts." RP at 13.

The sentencing court adopted Jensen's recommendation and ordered 237 months on Count I; 70 months on Count II; and 60 months on Count III for a total of 261 months of confinement. The sentencing court also corrected Jensen's judgment and sentence to reflect that Counts I-III "encompass the same criminal conduct and count as one crime in determining [Jensen's] offender score." CP at 126.

On November 29, 2021, Jensen filed an amended CrR 7.8(b) motion to amend his judgment and sentence. Jensen argued that during the November 2021 resentencing hearing, the "sentence imposed on Count II and Count III were above the standard sentencing range and should be corrected to reflect the correct sentence range." CP at 100. Subsequently, Jensen and the State jointly moved for an order amending Jensen's judgment and sentence to reflect the high end of the standard range on Counts II and III.

---

[6] During this sentencing hearing, the court was unable to access Jensen's original judgment and sentence. In the absence of the original judgment and sentence, Jensen agreed with the State's representation of his original sentence and clarified that he received a "sentence of 240 [months] on Count I; 70 months on Count II; and 60 months on Count III. . . . And [that] the actual number of months of total confinement ordered was 264 months, which included all of the enhancements." RP at 8.

At the resentencing hearing in December 2021, Jensen asked "the Court to correct or fix Count II and Count III in accordance with his actual sentence range on those two matters."[7] RP at 29. Jensen explicitly acknowledged that at the previous resentencing, "Defense and the State . . . were essentially telling the Court [what sentence to impose on Counts II and III] and [that] the Court followed that recommendation." RP at 29. Jensen proposed a corrected sentence range stating:

> And I believe--and [the State] can correct me if I'm wrong, [Jensen's] sentence range on Count II should be 29 to 34 months, and on Count III, I believe it's 16 to 24 months. So, we'd ask the Court on those two Counts to, essentially, sentence [Jensen] somewhere within that range and run that concurrent with Count I, where he was previously, at his last hearing, given 237 months, I believe, and that did include the enhancement.

RP at 29-30. The sentencing court entered an order amending Jensen's judgment and sentence to impose 34 months of confinement on Count II and 24 months of confinement on Count III, both of which include the 12 month deadly weapon enhancement, subsequent offense.

Jensen seeks relief from his judgment and sentence filed on December 14th, 2021.

ANALYSIS

Jensen argues that the "State failed to prove that [his] 1984 second degree theft conviction did not wash out." Br. of Appellant at 8. Accordingly, Jensen contends that we "should reverse and remand for a new sentencing hearing." Br. of Appellant at 8. We agree.

---

[7] Additionally, Jensen requested that the sentencing court "go back to the spirit of [his] first Judgment and Sentence and" run his deadly weapon enhancements concurrent with his other counts because the acts were part of the same criminal conduct. RP at 31. The State argued that the sentencing court did not have authority to run the sentence enhancements concurrently. The sentencing court declined to decide the issue determining that it "would be something to go to the Court of Appeals." RP at 48.

No. 56878-1-II

1.      *Proof of Criminal History & Affirmative Acknowledgment*

Jensen argues that during his resentencing hearings the State failed to prove his criminal history between 1984 and 1990.[8]  Jensen contends that in the absence of his void 1985 simple possession conviction, his 1984 second degree theft conviction washes out.  As a result, Jensen argues that his offender score should be reduced to 5.

The State argues that Jensen waived the issue concerning the calculation of his criminal history by "'affirmatively acknowledg[ing]'" his offender score.  Br. of Resp't at 8.  We disagree with the State.

Under RCW 9.94A.500(1), a trial court must conduct a sentencing hearing before imposing a sentence on a defendant.  A defendant's offender score influences their sentencing range "and is generally calculated by adding together the defendant's current offenses and the prior convictions."  *State v. Hunley*, 175 Wn.2d 901, 908-09, 287 P.3d 584 (2012).  Under RCW 9.94A.525, only certain prior convictions are included in a defendant's offender score.  Specifically, the statute provides that

> Class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

Former RCW 9.94A.525(2) (2006).  Second degree theft is a class C felony.  RCW 9A.56.040(2).

---

[8] Jensen does not argue that any other period prior to his 2006 crimes, including 1991 to 1997, constituted a wash out period for the 1984 second degree theft conviction.

8

For sentencing purposes, the State carries the burden to prove a defendant's criminal history by a preponderance of the evidence. RCW 9.94A.500(1); *Hunley*, 175 Wn.2d at 909-10 (holding that the 2008 amendments to the Sentencing Reform Act of 1981 unconstitutionally shifted the burden of proof to the defendant). Although "the preponderance of the evidence standard is 'not overly difficult to meet,' the State must at least introduce 'evidence of some kind to support the alleged criminal history.'" *Hunley*, 175 Wn.2d at 910 (quoting *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)). Bare, unsupported assertions do not satisfy the State's burden to prove a prior conviction. *Hunley*, 175 Wn.2d at 910.

A certified copy of the judgment is the best evidence of a prior conviction; however, the State may provide other comparable documents to prove prior convictions. *Hunley*, 175 Wn.2d at 910. Alternatively, a defendant can "affirmatively acknowledge [their] criminal history and thereby obviate the need for the State to produce evidence." *State v. Mendoza*, 165 Wn.2d 913, 920, 929, 205 P.3d 113 (2009) (disapproved of on other grounds).

In *Hunley*, the State submitted "a written statement of prosecuting attorney (prosecutor summary), summarizing its understanding of Hunley's criminal history." 175 Wn.2d at 905. The summary "was an unsworn document listing six of Hunley's alleged prior convictions, their cause numbers, and the sentencing court." *Hunley*, 175 Wn.2d at 905. The State did not provide a certified judgment and sentence or other comparable evidence. *Hunley*, 175 Wn.2d at 913. Instead, Hunley's prior convictions "were established solely on the prosecutor's summary assertion of the offenses." *Hunley*, 175 Wn.2d at 913. Our Supreme Court explained that "it violates due process to base a criminal defendant's sentence on the prosecutor's bare assertions or allegations of prior convictions. And it violates due process to treat the defendant's failure to

object to such assertions or allegations as an acknowledgment of the criminal history." *Hunley*, 175 Wn.2d at 915.

In *State v. Mendoza*, the court focused its inquiry "on what is required for an [affirmative] acknowledgement [of a defendant's criminal history] to occur." 165 Wn.2d at 920. The State submitted a statement summarizing "the evidence at trial, a list asserting Mendoza's criminal history, the prosecutor's calculation of Mendoza's offender score and appropriate sentencing range, and a sentencing recommendation." *Mendoza*, 165 Wn.2d at 917. In referencing Mendoza's criminal history, the statement "listed the sentencing court and date of the crime." *Mendoza*, 165 Wn.2d at 917-18. The State argued that "the defendants stipulated to their criminal history by either acknowledging the [prosecutor's] Statement or recommending a sentence in the range calculated by the prosecuting attorney." *Mendoza*, 165 Wn.2d at 925. The court rejected this argument and "emphasized the need for an *affirmative* acknowledgment by the defendant of *facts and information* introduced for the purposes of sentencing." *Mendoza*, 165 Wn.2d at 928. The court explained that neither a defendant's "failure to object to a prosecutor's assertions of criminal history" nor a defendant's "agreement with the ultimate sentencing recommendation" constitute affirmative acknowledgment. *Mendoza*, 165 Wn.2d at 928-29.

Where an offender score is based on insufficient evidence, we must remand the case for resentencing, allowing the State the opportunity to introduce evidence to establish the defendant's prior convictions. *Mendoza*, 165 Wn.2d at 930.

Here, the State did not meet its burden in proving Jensen's criminal history by a preponderance of the evidence, nor did Jensen affirmatively acknowledge his criminal history. In the absence of Jensen's void 1985 simple drug possession conviction, there appears to be at

least one five-year gap between Jensen's theft conviction and subsequent convictions. In reviewing the record of Jensen's 2021 resentencing hearing, it is not clear what evidence, if any, the State provided to support Jensen's alleged criminal history such that no other conviction used for points washed.

Furthermore, the record provided does not show that the State provided sufficient evidence to support its 2006 sentencing memorandum. The sentencing memorandum lists alleged misdemeanor convictions between 1988 and 1991 and it lists alleged felony convictions from 1984 to 2002, with a large gap of no felonies between 1984 and 1997[9] (when removing the void 1985 UPCS conviction). Even presuming the State's recitation of Jensen's criminal history in its memorandum is correct, it appears that Jensen spent five years in the community, between his second degree theft and current convictions, without committing any crime that subsequently resulted in a conviction. While the memorandum mentioned that the felony convictions did not wash due to "60+ misdemeanor convictions," the memorandum did not list misdemeanor convictions that covered every five-year period between his second degree theft and his current convictions. CP at 163.

Moreover, while Jensen filed an amended motion to resentence pursuant to *Blake*, wherein his counsel declared, "Attached as 'Appendix A' is a true and correct copy of the defendant's Felony Judgment and Sentence, including Criminal History in this cause," the attachment was Jensen's second amended felony judgment and sentence, which only listed the

---

[9] Although the State's sentencing memorandum lists Jensen's VNCO conviction as occurring in 1997, his May and August 2006 judgment and sentences list the date of sentence as August 1990, and the date of crime as June 1997. Jensen's 2009 judgment and sentence lists the date of sentence as August 1997 and the date of the crime as June 1997. Jensen's 2021 judgment and sentence lists the date of sentence as August 1990.

five felony convictions from 1984 to 2002 and his community custody status at the time of the current offenses. CP at 67. It is clear that Jensen does not argue that he was never convicted of second degree theft, instead Jensen argues that the State failed to prove that Jensen's second degree theft did not wash.

We conclude that Jensen proposing a sentence within the standard range for his offender score of 6 points does not amount to affirmative acknowledgement. There is no evidence that Jensen was asked to affirmatively acknowledge his criminal history nor did Jensen take any affirmative action concerning the facts and information of his criminal history. Jensen did not list out what constituted the points in the offender score calculation other than to note that the UPCS conviction was void. Additionally, there is no indication in the record provided that the court or parties considered the possibility of the second degree theft conviction washing out at Jensen's *Blake* resentencing. Just as a defendant is not "deemed to have affirmatively acknowledged the prosecutor's asserted criminal history based on [their] agreement with the ultimate sentencing recommendation," Jensen is not deemed to have affirmatively acknowledged his alleged criminal history by merely proposing a sentence within the standard ranges for the offender scores used at the resentencing. *Mendoza*, 165 Wn.2d at 928-29.

Accordingly, the State failed to meet its burden in proving Jensen's criminal history so as to preclude his 1984 theft conviction from washing out. Thus, remand for determination of Jensen's offender score is necessary.

12

STATEMENT OF ADDITIONAL GROUNDS

In Jensen's SAG, Jensen argues that (1) the sentencing court improperly imposed $30,000 restitution beyond the time limit to set restitution and without determining the actual amount of the victim's loss; (2) the sentencing court's May 2006 judgment and sentence improperly imposed discretionary legal financial obligations (LFOs); (3) his August 2006 amended judgment and sentence erroneously includes an additional 24 months of confinement; (4) the State erred in its recommendation that Jensen's two deadly weapon enhancements run consecutively and that such error influenced Jensen's 2021 amended judgment and sentence; (5) he did not receive 40-days' credit for time served pending his trial; (6) his appellate counsel and the State filed frivolous briefing that should be stricken; and (7) appellate counsel was ineffective in presenting Jensen's claims for review. We reject or decline to consider the issues raised in Jensen's SAG.

1.      *Restitution*

Jensen argues that the sentencing court improperly imposed $30,000 restitution. Jensen contends that the sentencing court erred by: (1) imposing the restitution beyond the 180-day time limit to set restitution and (2) failing to determine the actual amount of the victim's loss. Jensen further argues that during the April 10, 2009 resentencing, the State submitted, and the sentencing court adopted, an amended judgment and sentence that improperly imposed "interest [on] the $30,000 [restitution amount] over three years after the sentencing judge entered the order without interest applying to any (LFO's)."[10]  SAG (Dec. 30, 2022) (1 SAG) at 4.

---

[10] Imbedded in Jensen's argument is a claim of prosecutorial misconduct. Jensen appears to argue that the State introduced false statements during resentencing that impacted his judgment and sentence. This argument relies on facts outside the record.

Jensen's argument relies on facts outside the record. The record before us does not include the report of proceedings for either Jensen's April 2009 resentencing or his restitution hearing. We do not address claims based on facts outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 338, 899 P.2d 1251 (1995). Accordingly, we decline to consider this claim.

2. *Discretionary Fees*

Jensen argues that the sentencing court's May 2006 judgment and sentence imposed "discretionary Legal Financial Obligations . . . without statutory authority . . . [and] without first determining his financial status, homelessness, and indigency and ability to pay." 1 SAG at 18. Jensen contends that "the assessments should be reversed . . . and sums paid/received todate [sic] returned to [him] which were taken above the principle owed for [the] Victim Assessment of $500." 1 SAG at 18.

Jensen's argument relies on facts outside the record. Under former RCW 10.01.160,[11] "the court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them." When "determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." RCW 10.01.160(3) (2006). The record before us does not include a transcript of Jensen's prior sentencings when the legal financial obligations were initially imposed. Without such records it is not possible to determine what inquiry, if any, the

---

[11] Jensen appears to argue that the sentencing court should have engaged in an individualized inquiry in imposing his LFOs. *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015) (holding that "RCW 10.01.160(3) requires the record to reflect that the sentencing judge make an individualized inquiry into the defendant's current and future ability to pay before the court imposes LFOs").

sentencing court engaged in when imposing Jensen's LFOs. Accordingly, because Jensen's claim relies on facts outside the record, we decline to consider the claim. RAP 10.10 (a), (c); *McFarland*, 127 Wn.2d at 335, 338. This ruling does not prevent a sentencing court from considering this issue upon remand.

3.      *Sentencing Error—August 2006 Amended Judgment and Sentence*

Jensen argues that his August 2006 amended judgment and sentence erroneously includes an additional 24 months of confinement. Jensen contends that the sentencing court imposed the 24 months "based on false information by the [S]tate that a firearm was used" in the commission of Jensen's offense. 1 SAG at 37. Relatedly, it appears that Jensen is arguing that statements made regarding the enhancement being a firearm biased the judge such that it impacted his original sentence length. Jensen further argues that "in relation to Counts I and II even the existence of a pocket knife is missing" rendering his deadly weapon sentence enhancement void. 1 SAG at 37.

The issue of Jensen's 2006 amended judgment and sentence is outside the scope of our review. Jensen's 2006 judgment and sentence has since been amended and is no longer the controlling judgment and sentence. Furthermore, Jensen's 2021 judgment and sentence indicates that his sentence enhancements were based on Jensen's use of "a deadly weapon *other than a firearm*." CP at 125 (emphasis added). Moreover, the record shows that the jury found by special verdict form that Jensen committed each count armed with a deadly weapon. The record on review does not provide any evidence for this court to determine whether a pocket knife existed to support the deadly weapon enhancements, nor would such an inquiry be within the scope of this review.

15

Similarly, Jensen's argument concerning the State's statements during his original judgment and sentence relies on facts outside our record and is beyond the scope of our review.

Accordingly, we decline to consider this claim.

4. *Sentencing Error—April 2009 & November 2021*

Jensen argues that "the sentence imposed on April 10, 2009, was improperly entered as being 279 months." 1 SAG at 39. Jensen argues that the State erred in its recommendation that Jensen's two deadly weapon enhancements run consecutively. Jensen further contends that the State's recommendation resulted in an additional 24 months being added to his sentence. Jensen contends that the sentencing court miscalculated his sentence at the November 2021 sentencing hearing by relying on the sentence imposed in April 2009.

We address Jensen's November 2021 sentence above. Furthermore, Jensen's arguments concerning his April 2009 resentencing rely on facts outside the current record. Accordingly, we decline to address this issue. *McFarland*, 127 Wn.2d at 335, 338.

5. *Time Served*

Jensen argues that he did not receive 40-days' credit for time served pending his trial. The record before us does not contain Jensen's Incarceration Time Credit Form or other evidence concerning how Jensen's time served was calculated. Accordingly, this issue depends on facts outside the current record and we decline to address it. *McFarland*, 127 Wn.2d at 335, 338.

6. *Frivolous and Erroneous Briefing*

Jensen argues that both his counsel and the State filed "frivolous and erroneous briefs misrepresenting the facts of the appeal now before this court." 2 SAG (Dec. 30, 2022) at 4. Jensen contends that briefing filed by defense counsel and the State "must be stricken from the

record in order to preser[ve] [Jensen's] right to appeal." 2 SAG at 1. Jensen further requests that he be reimbursed for the costs of production and service and that this court impose sanctions on defense counsel and the State.

An appeal is frivolous where "considering the action in its entirety, it cannot be supported by any rational argument based in fact or law." *Dave Johnson Ins. v. Wright*, 167 Wn. App. 758, 785, 275 P.3d 339 (2012). An appeal may also be frivolous where the issues presented "are so devoid of merit that there is no reasonable possibility of reversal." *In re Marriage of Healy*, 35 Wn. App. 402, 406, 667 P.2d 114 (1983).

Under RAP 14.3(a), only "statutory attorney fees and the reasonable expenses actually incurred by a party for the [specific] items which were reasonably necessary for review may be awarded to a party as costs."

Here, Jensen's appellate counsel and the State do not raise issues devoid of merit. Furthermore, in reviewing the action in its entirety, we do not find that law or fact cannot support counsels' arguments.

In addressing Jensen's request for costs of production and service, it is not clear to us that Jensen's expenses were reasonably necessary for review. Although Jensen submitted a cost bill it is not clear which documents Jensen requested and whether the documents were appropriately before this court as part of the record on review.

Accordingly, we decline to impose sanctions, strike counsel's briefing, or reimburse Jensen's costs.

7.      *Supplemental Reply: Ineffective Assistance of Appellate Counsel*

Jensen argues that his appellate counsel was ineffective. Jensen appears to argue that appellate counsel failed to raise the arguments that Jensen wanted presented on appeal. Jensen further contends that he provided appellate counsel with exculpatory evidence and that appellate counsel disregarded this evidence in filing Jensen's appeal.

To succeed on an ineffective assistance of appellate counsel claim, an appellant must show that the issues not raised by appellate counsel had merit and that the appellant was prejudiced by appellate counsel's failure to raise the issues. *In re Pers. Restraint of Netherton*, 177 Wn.2d 798, 801, 306 P.3d 918 (2013).

Furthermore, in raising his ineffective assistance of counsel claim, Jensen relies on facts outside the record. Such claims must be resolved through a personal restraint petition. *McFarland*, 127 Wn.2d at 335. Thus, we decline to consider Jensen's claim of ineffective assistance of appellate counsel.

Accordingly, we conclude that none of the issues raised in Jensen's SAG entitle Jensen to relief. Thus, Jensen fails to establish that the legal issues identified in his SAG have merit and that appellate counsel's failure to raise these issues prejudiced Jensen.

CONCLUSION

We hold that the State did not meet its burden in proving Jensen's criminal history, nor did Jensen affirmatively acknowledge his criminal history. Accordingly, we remand the case for resentencing, allowing the State the opportunity to introduce evidence to establish the defendant's prior convictions and for the court to determine Jensen's offender scores.

18

No. 56878-1-II

A majority of the panel having determined that this opinion will not be published in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, C.J.

Veljacic, J.